<em>Judgment affirmed.</em>

## TENNESSEE *v.* DAVIS.

1. Sect. 643 of the Revised Statutes of the United States, which declares that "when any civil suit or criminal prosecution is commenced in any court of a State against any officer appointed under or acting by authority of any revenue law of the United States now or hereafter enacted, or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law, or on account of any right, title, or authority claimed by such officer or other person under any such law, . . . the said suit or prosecution may, at any time before the trial or final hearing thereof, be removed for trial into the Circuit Court next to be holden in the district where the same is pending, upon the petition of such defendant to said Circuit Court," &c., is not in conflict with the Constitution of the United States.

2. A. was, in a State court of Tennessee, indicted for murder. In his petition, duly verified, for removal of the prosecution to the Circuit Court of the United States, he stated that, although indicted for murder, no murder was committed; that the killing was done in necessary self-defence, to save his own life; that at the time the alleged act for which he was indicted was committed he was, and still is, an officer of the United States, to wit, a deputy collector of internal revenue; that the act for which he was indicted was performed in his own necessary self-defence while engaged in the discharge of his duties as deputy collector, and while acting by and under the authority of the internal-revenue laws of the United States; that what he did was done under and by right of his said office; that it was his duty to seize illicit distilleries and the apparatus used for the illicit and unlawful distillation of spirits; and that while so attempting to enforce said laws, as deputy collector as aforesaid, he was assaulted and fired upon by a number of armed men, and that in defence of his life he returned the fire, which is the killing mentioned in the indictment. *Held,* that the petition was in conformity with the statute, and, upon being filed, the prosecution was removed to the Circuit Court of the United States for that district.

3. The United States is a government with authority extending over the whole territory of the Union, acting upon the States and the people of the States. While limited in the number of its powers, it is, so far as its sovereignty

extends, supreme. No State can exclude it from exercising them, obstruct its authorized officers against its will, or withhold from it, for a moment, the cognizance of any subject which the Constitution has committed to it.

4. The general government must cease to exist whenever it cannot enforce the exercise of its constitutional powers within the States by the instrumentality of its officers and agents. If, when thus acting, within the scope of their authority, they can be arrested and brought to trial in a State court, for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection, — if their protection must be left to the action of the State court, — the operations of the general government may at any time be arrested at the will of one of the States. No such element of weakness is to be found in the Constitution.

5. The provision of the Constitution declaring that the judicial power of the United States extends "to *all* cases in law and equity arising under the Constitution, the laws of the United States, and treaties made or which shall be made under their authority," embraces alike civil and criminal cases. Both are equally within that power.

6. A case arises under that Constitution not merely where a party comes into court to demand something conferred upon him by the Constitution, a law of the United States, or a treaty, but wherever its correct decision as to the right, privilege, claim, protection, or defence of a party, in whole or in part depends upon the construction of either. It is in the power of Congress to give the circuit courts of the United States jurisdiction of such a case, although it may involve other questions of fact or of law.

7. If the case, whether civil or criminal, be one to which the judicial power of the United States extends, its removal to the Federal court does not invade State jurisdiction. On the contrary, a denial of the right of the general government to remove, take charge of and try any case arising under the Constitution and laws of the United States, is a denial of its conceded sovereignty over a subject expressly committed to it. It is a denial of a doctrine necessary for the preservation of the acknowledged powers of the government. The exercise of the power to remove criminal prosecutions is seen in the act of Feb. 4, 1815 (3 Stat. 198), again in the third section of the act of March 2, 1833 (4 id. 633), and more recently in the act of July 13, 1866. 14 id. 171.

CERTIFICATE of division in opinion between the judges of the Circuit Court of the United States for the Middle District of Tennessee.

James M. Davis, was, in the Circuit Court for Grundy County, in the State of Tennessee, indicted for murder. On the twenty-ninth day of August, 1878, before the trial of the indictment, he presented to the Circuit Court of the United States for the proper district the following petition, praying for a removal of the case into that court, and for a *certiorari :* —

"Your petitioner, James M. Davis, would most respectfully show to the court that on the twenty-first day of May, 1878, at the May Term of the Circuit Court of Grundy County, Tennessee, the grand jurors for the State of Tennessee, at the instance of E. M. Haynes, as prosecutor, indicted your petitioner for wilfully, premeditatedly, deliberately, and of his malice aforethought killing one J. B. Haynes, which indictment and criminal prosecution so instituted is still pending against your petitioner in the Circuit Court of Grundy County, within the middle district of Tennessee.

"And he further shows that no murder was committed; but, on the other hand, the killing was committed in his own necessary self-defence, to save his own life; that at the time the alleged act for which he was indicted was committed he was, and still is, an officer of the United States, to wit, a deputy collector of internal revenue, and the act for which he was indicted was performed in his own necessary self-defence, while engaged in the discharge of the duties of his office as deputy collector of internal revenue; and he was acting by and under the authority of the internal-revenue laws of the United States, and was done under and by right of his office, to wit, as deputy collector of internal revenue. It is his duty to seize illicit distilleries and the apparatus that is being used for the illicit and unlawful distillation of spirits, and while so attempting to enforce the revenue laws of the United States, as deputy collector aforesaid, he was assaulted and fired upon by a number of armed men, and in defence of his life returned the fire.

In view of these facts, your petitioner prays that said cause may be removed from the Circuit Court of Grundy County to the Circuit Court of the United States for the Middle District of Tennessee for trial, and that a *certiorari* issue. And as in duty bound he will ever pray.

"JAMES A. WARDER, *Attorney.*

"DISTRICT OF MIDDLE TENNESSEE, }
     "*County of Davidson :* }

"James M. Davis, being duly sworn, deposes and says that he is the petitioner named in said petition; that he has heard the same read, and knows the contents thereof, and that the same is true of his own knowledge.

"JAMES M. DAVIS.

"Subscribed and sworn to before me this Aug. 13, 1878.

"J. W. CAMPBELL,
"*U. S. Com'r for Middle Tenn.*"

The record having been returned, in compliance with the writ, a motion was made to remand the case to the State court; and, on the hearing of the motion, the judges were divided in opinion upon the following questions, which are certified here : —

*First,* Whether an indictment of a revenue officer (of the United States) for murder, found in a State court, under the facts alleged in the petition for removal in this case, is removable to the Circuit Court of the United States, under sect. 643 of the Revised Statutes.

*Second,* Whether, if removable from the State court, there is any mode and manner of procedure in the trial prescribed by the act of Congress.

*Third,* Whether, if not, a trial of the guilt or innocence of the defendant can be had in the United States Circuit Court.

*Mr. Benjamin J. Lea,* Attorney-General of Tennessee, and *Mr. James G. Field* for the plaintiff in error.

*Mr. Attorney-General Devens* and *Mr. Assistant Attorney-General Smith, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The first of the questions certified is one of great importance, bringing as it does into consideration the relation of the general government to the government of the States, and bringing also into view not merely the construction of an act of Congress, but its constitutionality. That in this case the defendant's petition for removal of the cause was in the form prescribed by the act of Congress admits of no doubt. It represented that he had been indicted for murder in the Circuit Court of Grundy County, and that the indictment and criminal prosecution were still pending. It represented further, that no murder was committed, but that, on the other hand, the killing was committed in the petitioner's own necessary self-defence, to save his own life; that at the time when the alleged act for which he was indicted was committed he was, and still is, an officer of the United States, to wit, a deputy collector of internal revenue, and that the act for which he was indicted was performed in his own necessary self-defence while engaged in the discharge of his duties as deputy collector; that he was

acting by and under the authority of the internal-revenue laws of the United States ; that what he did was done under and by right of his office, to wit, as deputy collector of internal revenue; that it was his duty to seize illicit distilleries and the apparatus that is used for the illicit and unlawful distillation of spirits ; and that while so attempting to enforce the revenue laws of the United States, as deputy collector as aforesaid, he was assaulted and fired upon by a number of armed men, and that in defence of his life he returned the fire. The petition was verified by oath, and the certificate required by the act of Congress to be given by the petitioner's legal counsel was appended thereto. There is, therefore, no room for reasonable doubt that a case was made for the removal of the indictment into the Circuit Court of the United States, if sect. 643 of the Revised Statutes embraces criminal prosecutions in a State court, and makes them removable, and if that act of Congress was not unauthorized by the Constitution. The language of the statute (so far as it is necessary at present to refer to it) is as follows : " When any civil suit or criminal prosecution is commenced in any court of a State against any officer appointed under, or acting by authority of, any revenue law of the United States, now or hereafter enacted, or against any person acting by or under authority of any such officer, on account of any act done under color of his office or of any such law, or on account of any right, title, or authority claimed by such officer or other person under any such law," the case may be removed into the Federal court. Now, certainly the petition for the removal represented that the act for which the defendant was indicted was done not merely under color of his office as a revenue collector, or under color of the revenue laws, not merely while he was engaged in performing his duties as a revenue officer, but that it was done under and by right of his office, and while he was resisted by an armed force in his attempts to discharge his official duty. This is more than a claim of right and authority under the law of the United States for the act for which he has been indicted. It is a positive assertion of the existence of such authority. But the act of Congress authorizes the removal of any cause, when the acts of the defendant complained of were done, or claimed to have

been done, in the discharge of his duty as a Federal officer. It makes such a claim a basis for the assumption of Federal jurisdiction of the case, and for retaining it, at least until the claim proves unfounded.

That the act of Congress does provide for the removal of criminal prosecutions for offences against the State laws, when there arises in them the claim of the Federal right or authority, is too plain to admit of denial. Such is its positive language, and it is not to be argued away by presenting the supposed incongruity of administering State criminal laws by other courts than those established by the State. It has been strenuously urged that murder within a State is not made a crime by any act of Congress, and that it is an offence against the peace and dignity of the State alone. Hence it is inferred that its trial and punishment can be conducted only in State tribunals, and it is argued that the act of Congress cannot mean what it says, but that it must intend only such prosecutions in State courts as are for offences against the United States, — offences against the revenue laws. But there can be no criminal prosecution initiated in any State court for that which is merely an offence against the general government. If, therefore, the statute is to be allowed any meaning, when it speaks of criminal prosecutions in State courts, it must intend those that are instituted for alleged violations of State laws, in which defences are set up or claimed under United States laws or authority.

We come, then, to the inquiry, most discussed during the argument, whether sect. 643 is a constitutional exercise of the power vested in Congress. Has the Constitution conferred upon Congress the power to authorize the removal, from a State court to a Federal court, of an indictment against a revenue officer for an alleged crime against the State, and to order its removal before trial, when it appears that a Federal question or a claim to a Federal right is raised in the case, and must be decided therein? A more important question can hardly be imagined. Upon its answer may depend the possibility of the general government's preserving its own existence. As was said in *Martin* v. *Hunter* (1 Wheat. 363), "the general government must cease to exist whenever it loses the

power of protecting itself in the exercise of its constitutional powers." It can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offence against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection, — if their protection must be left to the action of the State court, — the operations of the general government may at any time be arrested at the will of one of its members. The legislation of a State may be unfriendly. It may affix penalties to acts done under the immediate direction of the national government, and in obedience to its laws. It may deny the authority conferred by those laws. The State court may administer not only the laws of the State, but equally Federal law, in such a manner as to paralyze the operations of the government. And even if, after trial and final judgment in the State court, the case can be brought into the United States court for review, the officer is withdrawn from the discharge of his duty during the pendency of the prosecution, and the exercise of acknowledged Federal power arrested.

We do not think such an element of weakness is to be found in the Constitution. The United States is a government with authority extending over the whole territory of the Union, acting upon the States and upon the people of the States. While it is limited in the number of its powers, so far as its sovereignty extends it is supreme. No State government can exclude it from the exercise of any authority conferred upon it by the Constitution, obstruct its authorized officers against its will, or withhold from it, for a moment, the cognizance of any subject which that instrument has committed to it.

By the last clause of the eighth section of the first article of the Constitution, Congress is invested with power to make all laws necessary and proper for carrying into execution not only all the powers previously specified, but also all other powers vested by the Constitution in the government of the United States, or in any department or officer thereof. Among these is the judicial power of the government. That is declared by

the second section of the third article to "extend to all cases in law and equity arising under the Constitution, the laws of the United States, and treaties made or which shall be made under their authority," &c. This provision embraces alike civil and criminal cases arising under the Constitution and laws. *Cohens* v. *Virginia*, 6 Wheat. 264. Both are equally within the domain of the judicial powers of the United States, and there is nothing in the grant to justify an assertion that whatever power may be exerted over a civil case may not be exerted as fully over a criminal one. And a case arising under the Constitution and laws of the United States may as well arise in a criminal prosecution as in a civil suit. What constitutes a case thus arising was early defined in the case cited from 6 Wheaton. It is not merely one where a party comes into court to demand something conferred upon him by the Constitution or by a law or treaty. A case consists of the right of one party as well as the other, and may truly be said to arise under the Constitution or a law or a treaty of the United States whenever its correct decision depends upon the construction of either. Cases arising under the laws of the United States are such as grow out of the legislation of Congress, whether they constitute the right or privilege, or claim or protection, or defence of the party, in whole or in part, by whom they are asserted. Story on the Constitution, sect. 1647; 6 Wheat. 379. It was said in *Osborn* v. *The Bank of the United States* (9 Wheat. 738), "When a question to which the judicial power of the Union is extended by the Constitution forms an ingredient of the original cause, it is in the power of Congress to give the circuit courts · jurisdiction of that cause, although other questions of fact or of law may be involved in it." And a case arises under the laws of the United States, when it arises out of the implication of the law. Mr. Chief Justice Marshall said, in the case last cited: "It is not unusual for a legislative act to involve consequences which are not expressed. An officer, for example, is ordered to arrest an individual. It is not necessary, nor is it usual, to say that he shall not be punished for obeying this order. His security is implied in the order itself. It is no unusual thing for an act of Congress to imply, without expressing, this very exemption

from State control." . . . " The collectors of the revenue, the carriers of the mail, the mint establishment, and all those institutions which are public in their nature, are examples in point. It has never been doubted that all who are employed in them are protected while in the line of their duty; and yet this protection is not expressed in any act of Congress. It is incidental to, and is implied in, the several acts by which those institutions are created; and is secured to the individuals employed in them by the judicial power alone; that is, the judicial power is the instrument employed by the government in administering this security."

The constitutional right of Congress to authorize the removal before trial of civil cases arising under the laws of the United States has long since passed beyond doubt. It was exercised almost contemporaneously with the adoption of the Constitution, and the power has been in constant use ever since. The Judiciary Act of Sept. 24, 1789, was passed by the first Congress, many members of which had assisted in framing the Constitution; and though some doubts were soon after suggested whether cases could be removed from State courts before trial, those doubts soon disappeared. Whether removal from a State to a Federal court is an exercise of appellate jurisdiction, as laid down in Story's Commentaries on the Constitution, sect. 1745, or an indirect mode of exercising original jurisdiction, as intimated in *Railway Company* v. *Whitton* (13 Wall. 270), we need not now inquire. Be it one or the other, it was ruled in the case last cited to be constitutional. But if there is power in Congress to direct a removal before trial of a civil case arising under the Constitution or laws of the United States, and direct its removal because such a case has arisen, it is impossible to see why the same power may not order the removal of a criminal prosecution, when a similar case has arisen in it. The judicial power is declared to extend to all cases of the character described, making no distinction between civil and criminal, and the reasons for conferring upon the courts of the national government superior jurisdiction over cases involving authority and rights under the laws of the United States are equally applicable to both. As we have already said, such a jurisdiction is necessary for the preserva-

tion of the acknowledged powers of the government. It is essential, also, to a uniform and consistent administration of national laws. It is required for the preservation of that supremacy which the Constitution gives to the general government by declaring that the Constitution and laws of the United States made in pursuance thereof, and the treaties made or which shall be made under the authority of the United States, shall be the supreme laws of the land, and the judges in every State shall be bound thereby, any thing in the constitution or laws of any State to the contrary notwithstanding." The founders of the Constitution could never have intended to leave to the possibly varying decisions of the State courts what the laws of the government it established are, what rights they confer, and what protection shall be extended to those who execute them. If they did, where is the supremacy over those questions vested in the government by the Constitution? If, whenever and wherever a case arises under the Constitution and laws or treaties of the United States, the national government cannot take control of it, whether it be civil or criminal, in any stage of its progress, its judicial power is, at least, temporarily silenced, instead of being at all times supreme. In criminal as well as in civil proceedings in State courts, cases under the Constitution and laws of the United States might have been expected to arise, as, in fact, they do. Indeed, the powers of the general government and the lawfulness of authority exercised or claimed under it, are quite as frequently in question in criminal cases in State courts as they are in civil cases, in proportion to their number.

The argument so much pressed upon us, that it is an invasion of the sovereignty of a State to withdraw from its courts into the courts of the general government the trial of prosecutions for alleged offences against the criminal laws of a State, even though the defence presents a case arising out of an act of Congress, ignores entirely the dual character of our government. It assumes that the States are completely and in all respects sovereign. But when the national government was formed, some of the attributes of State sovereignty were partially, and others wholly, surrendered and vested in the United States. Over the subjects thus surrendered the sovereignty

of the States ceased to extend. Before the adoption of the Constitution, each State had complete and exclusive authority to administer by its courts all the law, civil and criminal, which existed within its borders. Its judicial power extended over every legal question that could arise. But when the Constitution was adopted, a portion of that judicial power became vested in the new government created, and so far as thus vested it was withdrawn from the sovereignty of the State. Now the execution and enforcement of the laws of the United States, and the judicial determination of questions arising under them, are confided to another sovereign, and to that extent the sovereignty of the State is restricted. The removal of cases arising under those laws, from State into Federal courts, is, therefore, no invasion of State domain. On the contrary, a denial of the right of the general government to remove them, to take charge of and try any case arising under the Constitution or laws of the United States, is a denial of the conceded sovereignty of that government over a subject expressly committed to it.

It is true, the act of 1789 authorized the removal of civil cases only. It did not attempt to confer upon the Federal courts all the judicial power vested in the government. Additional grants have from time to time been made. Congress has authorized more and more fully, as occasion has required, the removal of civil cases from State courts into the circuit courts of the United States, and the constitutionality of such authorization has met with general acquiescence. It has been sustained by the decisions of this court.

Nor has the removal of civil cases alone been authorized. On the 4th of February, 1815, an act was passed (3 Stat. 198) providing that if any suit *or prosecution* should be commenced in any State court against any collector, naval officer, surveyor, inspector, or any other officer, civil or military, or any other person aiding or assisting, agreeably to the provisions of the act, or under color thereof, for any act done or omitted to be done as an officer of the customs, or for any thing done by virtue of the act or under color thereof, it might be removed before trial into the Circuit Court of the United States, provided the act should not apply to any offences involving corporal punishment. This act expressly applied to a criminal

action or prosecution. It was intended to be of short dura-
tion, but it was extended by the act of March 3, 1815 (3 Stat.
p. 233, sect. 6), and re-enacted in 1817 for a period of four
years.

So, in 1833, by the act of March 2 (4 id. c. 57, sect. 3), it
was enacted that in any case where suit *or prosecution* should
be commenced in a State court of any State against any officer
of the United States, or other person, for or on account of any
act done under the revenue laws of the United States, or under
color thereof, or for or on account of any right, authority, or
title set up or claimed by such officer, or other person, under
any such law of the United States, the suit or prosecution
might be removed, before trial, into the Federal Circuit Court
of the proper district. The history of this act is well known.
It was passed in consequence of an attempt by one of the
States of the Union to make penal the collection by United
States officers within the State of duties under the tariff laws.
It was recommended by President Jackson in a special mes-
sage, and passed in the Senate by a vote of 32 to 1, and in the
House by a majority of 92. It undoubtedly embraced both
civil and criminal cases. It was so understood and intended
when it was passed. The chairman of the Judiciary Com-
mittee which introduced the bill said : " It gives the right
to remove at any time before trial, but not after judgment has
been given, and thus affects in no way the dignity of the State
tribunals. *Whether in criminal or civil cases, it gives this right
of removal.* Has Congress power in criminal cases ? He
would answer the question in the affirmative. Congress had
the power to give the right in criminal as well as in civil cases,
because the second section of the third article of the Consti-
tution speaks of all cases in law and equity, and these compre-
hensive terms cover all. . . . It was more necessary that this
jurisdiction should be extended over criminal than over civil
cases. If it were not admitted that the Federal judiciary had
jurisdiction of criminal cases, then was nullification ratified
and sealed for ever ; for a State would have nothing more to do
than to declare an act a felony or misdemeanor, to nullify all
the laws of the Union."

The provisions of the act of July 13, 1866 (14 Stat. 171,

sect. 67), relative to the removal of suits or prosecutions in State courts against internal-revenue officers, provisions re-enacted in sect. 643 of the Revised Statutes, are almost identical with those of the act of 1833, the only noticeable difference being, that in the latter act the adjective " criminal " is inserted before the word " prosecution." This made no change in the meaning. The well-understood legal signification of the word " prosecution " is, a criminal proceeding at the suit of the government. Thus it appears that all along our history the legislative understanding of the Constitution has been that it authorizes the removal from State courts to the circuit courts of the United States, alike civil and criminal cases, arising under the laws, the Constitution, or treaties.

The subject has more than once been before this court, and it has been fully considered. In *Martin* v. *Hunter* (1 Wheat. 304), it was admitted in argument by Messrs. Tucker and Dexter that there might be a removal before judgment, though it was contended there could not be after; but the contention was overruled, and it was declared that Congress might authorize a removal either before or after judgment; that the time, the process, and the manner must be subject to its absolute legislative control. In that case, also, it was said that the remedy of the removal of suits would be utterly inadequate to the purposes of the Constitution, if it could act only upon the parties, and not upon the State courts. Judge Story, who delivered the opinion, adding: " In respect to criminal prosecutions, the difficulty seems admitted to be insurmountable, and, in respect to civil suits, there would in many cases be rights without corresponding remedies." . . . " In respect to criminal prosecutions there would at once be an end of all control, and the State decisions would be paramount to the Constitution." The expression that the difficulty in the way of the removal of criminal prosecutions seems admitted to be insurmountable has been laid hold of here, in argument, as a declaration of the court that criminal prosecutions cannot be removed. It is a very shortsighted and unwarranted inference. What the court said was, that the remedy in such cases seems to be insurmountable, *if it could not act upon State courts as well as parties;* and it was ruled that it does thus act. The expression must be read in its

connection. In *Martin* v. *Hunter* the removal was by writ of error after final judgment in the State court; which certainly seems more an invasion of State jurisdiction than a removal before trial. The case was followed by *Cohens* v. *Virginia* (6 id. 264), a criminal case, in which the defendant set up against a criminal prosecution an authority under an act of Congress. There it was decided that cases might be removed in which a State was a party. This also was a writ of error after a final judgment; but it, as well as the former case, recognized the right of Congress to authorize removals either before or after trial, and neither case made any distinction between civil and criminal proceedings.

In *The Mayor* v. *Cooper* (6 Wall. 247), the validity of the removal acts of 1863, March 3, sect. 5 of c. 81 (12 Stat. 756), and its amendment of May 11, 1866 (14 id. 1866), which embraced not only civil cases but criminal prosecutions, and authorized their removal before trial, came under consideration, and it was sustained. This court then said: The constitutional power is given in general terms. "No limitation is imposed. The broadest language is used. 'All cases' so arising are embraced. How jurisdiction shall be acquired by the inferior court" (of the United States), "whether it shall be original or appellate, or original in part and appellate in part, and the manner of procedure in its exercise after it has been acquired, is not prescribed. This Constitution is silent upon these subjects. They are remitted without check or limitation to the wisdom of the legislature." "Jurisdiction, original or appellate, alike comprehensive in either case, may be given. The constitutional boundary line of both is the same. Every variety and form of appellate jurisdiction within the sphere of the power, extending as well to the courts of the States as to those of the nation, is permitted. There is no distinction in this respect between civil and criminal cases. Both are within its scope. Nor is it any objection that questions are involved which are not at all of a Federal character. If one of the latter exist, if there be a single such ingredient in the mass, it is sufficient." The court added, "We entertain no doubt of the constitutionality of the jurisdiction given by the act under which this case has arisen." See also *Com.* v. *Ashmun,*

3 Grant, Cas. 436; id. 416–418; *State* v. *Hoskins* (77 N. C. 530), decided in 1877, where the constitutionality of sect. 643 of the Revised Statutes was affirmed after a full and instructive discussion.

It ought, therefore, to be considered as settled that the constitutional powers of Congress to authorize the removal of criminal cases for alleged offences against State laws from State courts to the circuit courts of the United States, when there arises a Federal question in them, is as ample as its power to authorize the removal of a civil case. Many of the cases referred to, and others, set out with great force the indispensability of such a power to the enforcement of Federal law.

It follows that the first question certified to us from the Circuit Court of Tennessee must be answered in the affirmative.

The second question is, " Whether, if the case be removable from the State court, there is any mode and manner of procedure in the trial prescribed by the act of Congress."

Whether there is or not is totally immaterial to the inquiry whether the case is removable; and this question can hardly have arisen on the motion to remand the case. The imaginary difficulties and incongruities supposed to be in the way of trying in the Circuit Court an indictment for an alleged offence against the peace and dignity of a State, if they were real, would be for the consideration of Congress. But they are unreal. While it is true there is neither in sect. 643, nor in the act of which it is a re-enactment, any mode of procedure in the trial of a removed case prescribed, except that it is ordered the cause when removed shall proceed as a cause originally commenced in that court, yet the mode of trial is sufficiently obvious. The circuit courts of the United States have all the appliances which are needed for the trial of any criminal case. They adopt and apply the laws of the State in civil cases, and there is no more difficulty in administering the State's criminal law. They are not foreign courts. The Constitution has made them courts within the States to administer the laws of the States in certain cases; and, so long as they keep within the jurisdiction assigned to them, their general powers are adequate to the

trial of any case.   The supposed anomaly of prosecuting offenders against the peace and dignity of a State, in tribunals of the general government, grows entirely out of the division of powers between that government and the government of a State; that is, a division of sovereignty over certain matters. When this is understood (and it is time it should be), it will not appear strange that, even in cases of criminal prosecutions for alleged offences against a State, in which arises a defence under United States law, the general government should take cognizance of the case and try it in its own courts, according to its own forms of proceeding.

The third question certified has been sufficiently answered in what we have said respecting the second.   It must be answered in the affirmative.

The first question will be answered in the affirmative, and the second is answered as in the opinion.

MR. JUSTICE CLIFFORD, with whom concurred MR. JUSTICE FIELD, dissenting.

Civil suits or criminal prosecutions, commenced in a State court against a revenue officer of the United States, on account of any act done under color of his office, or on account of any right, title, or authority claimed by such officer under such law, may, at any time before the trial or final hearing thereof, be removed for trial into the Circuit Court next to be holden in the district where the same is pending, in the manner prescribed in the section conferring the right.   Rev. Stat., sect. 643.

Sufficient appears to show that the prisoner was formally indicted of murder in the first degree by the grand jury of the State, that the indictment was duly filed in the proper State court for trial, and that it was subsequently removed into the Circuit Court of the United States for the district, on motion of the accused.   Neither the indictment nor the order of removal is exhibited in the transcript.   Instead of that, the statement is that the Attorney-General of the State moved in the Circuit Court to remand the cause to the State court in which the indictment was found.   Hearing was had, and it appears that the judges of the Circuit Court were divided in

opinion whether the motion of the Attorney-General ought or ought not to be granted.

Appended to the first question certified by the judges of the court is a paper which purports to be the petition of the prisoner under which the order of removal was granted. From that it appears that the homicide charged is admitted, but that the defence is that the killing by the prisoner was in self-defence, to save his own life; that he was and still is a deputy collector of internal revenue; and that the act for which he is indicted, as he alleges, was performed in self-defence while he was engaged in the performance of the duties of his office. Speaking more specifically, he states that it is his duty to seize illicit distilleries and the apparatus that is being used for the illicit and unlawful distillation of spirits, and that while attempting to enforce the revenue laws he was assaulted and fired upon by a number of armed men, and that in defence of his life he returned the fire.

Three questions are certified, as follows: 1. Is an indictment in a State court for murder, under the facts set forth in the petition for removal in this case, removable to the Circuit Court, under sect. 643 of the Revised Statutes? 2. If removable from the State court, is there any mode of procedure in the trial prescribed by an act of Congress? 3. And if not, can a trial of the guilt or innocence of the prisoner be had in the Circuit Court?

Questions of greater importance than those certified here by the Circuit Court could hardly be presented for discussion, as they involve the necessity of an inquiry into the nature, extent, and limitation of the judicial power both of the United States and of the circuit courts established by Congress. Judicial power, like other powers granted to the United States by the Constitution, is defined by the instrument making the grant. Governed by that rule, we find that the second section of the third article ordains that the judicial power shall extend to all cases in law and equity arising under the Constitution, the laws of the United States, and treaties made or which shall be made under their authority, which provision describes the whole extent of the judicial power of the United States conferred by the Constitution that it is necessary to examine in

the present case. Other clauses in the same section enumerate numerous other subject-matters falling within the cognizance either of the Supreme Court or of the inferior courts created by Congress; but it will not be necessary to examine those clauses, as they have no bearing upon the questions to be answered.

Pursuant to the first section of the third article, the Congress passed the Judiciary Act, making provision for the organization of the Supreme Court, and establishing the circuit and district courts. 1 Stat. 73.

Jurisdiction of crimes and offences committed within their respective districts, and cognizable under the authority of the United States to a limited extent, was by that act conferred upon the district courts; but the eleventh section of the act provided that the circuit courts should have exclusive cognizance of all crimes and offences cognizable under the authority of the United States, except where the act otherwise provides, and concurrent jurisdiction with the district courts of the crimes and offences cognizable in those courts. id. 78.

Neither the district nor circuit courts have jurisdiction of any crimes or offences by that act, unless the same are cognizable under the authority of the United States. Criminal jurisdiction is not by the Constitution conferred upon any court, and it is settled law that Congress must in all cases make an act criminal and define the offence before either the district or circuit courts can take cognizance of an indictment charging the act as an offence against the authority of the United States. Obvious and undoubted as the proposition is, it admits of but little illustration, and needs nothing more.

Powers expressly enumerated are granted to Congress, and such as shall be necessary and proper for carrying the enumerated powers into execution, or, in other words, the powers of Congress are made up of concessions from the people of the several States, with such implied powers as are necessary and proper to carry the express concessions into effect, subject to the limitation that whatever is not expressly granted or necessarily or properly implied to carry the granted powers into effect is reserved to the States respectively, or to the people. Like the other powers specified, the judicial power of the

United States is a constituent part of those concessions from the several States, and as was held by this court at a very early period, it is to be exercised by the Supreme Court or such inferior courts as the Congress may from time to time ordain and establish.

Of all the courts which the United States may, under their general powers, constitute, one only — the Supreme Court — possesses jurisdiction derived immediately from the Constitution, and of which the legislative power cannot deprive it. All other courts organized by the general government possess no jurisdiction but what is given by the power that created them, and they can be vested with none except what the power ceded to the United States will authorize the Congress to confer. Certain implied powers, it is admitted, must necessarily result to courts of justice, — such as to fine for contempt or imprison for contumacy, — but the jurisdiction of crimes against the authority of the United States is not among such implied powers, the universal rule in the Federal courts being that the legislative authority of the Union must first make an act a crime, affix a punishment to it, and prescribe what courts have jurisdiction of such an indictment, before any Federal tribunal can determine the guilt or innocence of the supposed offender. *United States* v. *Hudson & Goodwin,* 7 Cranch, 32; *United States* v. *Coolidge,* 1 Wheat. 415; 1 Whart. Crim. Law (7th ed.), sect. 163.

In accordance with that rule, it was held by the whole court, Marshall, C. J., delivering the opinion, that the Circuit Court could not take cognizance of the crime of murder committed on board of one of our ships of war lying in a harbor within State jurisdiction, because the eighth section of the Crimes Act, by which alone any provision had been made for the punishment of such a crime on shipboard, only defines offences perpetrated upon the high seas or in any river, haven, basin, or bay out of the jurisdiction of any particular State. *United States* v. *Bevans,* 3 Wheat. 336, 387.

It was argued in behalf of the prosecution in that case that the jurisdiction existed because the homicide was committed on board a ship of war; but Mr. Webster denied the proposition, and contended that the jurisdiction of the Circuit Court

was only such as had been given to it by an act of Congress, and insisted that it was sufficient to maintain for the prisoner that no act of Congress authorized the Circuit Court to take cognizance of any offences merely because they were committed on ships of war. Instead of that, he insisted that it was the nature of the place in which the ship lies and not the character of the ship itself that decides the question of jurisdiction; and added, that if committed within the territorial jurisdiction of the State it excluded the jurisdiction of the Circuit Court by express exception, the language of the act only giving authority to try and punish offenders for offences committed upon the high seas, or in any river, haven, basin, or bay out of the jurisdiction of any particular State.

Commenting upon that provision, the Chief Justice said, It is not the offence, but the bay in which it is committed, which must be out of the jurisdiction of the State, adding that, unless the place itself be out of the jurisdiction of the State, Congress has not given cognizance of the offence to the circuit courts. *United States* v. *Wiltberger*, 5 Wheat. 76, 96.

Apply the conclusion reached in those two cases to the question under discussion, and it is clear that, in order to ascertain the jurisdiction of the Federal courts in criminal cases, resort must be had to the acts of Congress providing for the punishment of crimes; for although such courts are unquestionably to look to the common law, in the absence of statutory provision, for rules of guidance in the exercise of their functions in criminal as well as in civil cases, it is to the acts of Congress passed in pursuance of the Constitution alone that they must have recourse to determine what constitutes an offence against the authority of the United States, it being settled law that the United States have no unwritten code to which resort can be had as a source of jurisdiction. Conkling's Treatise (5th ed.), 181.

Courts of the United States derive no jurisdiction in criminal cases from the common law, nor can such tribunals take cognizance of any act of an individual as a public offence, or declare it punishable as such, until it has been defined as an offence by an act of Congress passed in pursuance of the Constitution. Argument to show that Congress has never

defined the act of murder, at a place within the exclusive jurisdiction of a State, as an offence against the authority of the United States, is certainly unnecessary, as no sane man will venture to advance such a proposition; nor will any one who ever looked into the record of this case deny that the place where the homicide which is the subject of inquiry was committed is in the exclusive jurisdiction of the State whose laws were violated by the perpetrator of the felonious act. None of these matters can be denied consistent with the truth of the facts as judicially known to every member of the court.

Offences against the authority of the United States, defined by an act of Congress passed in pursuance of the Constitution, are cognizable in the circuit courts by virtue of the eleventh section of the Judiciary Act, whether committed upon the high seas or in any river, haven, basin, or bay out of the jurisdiction of any particular State, or in any fort, dockyard, arsenal, armory, or magazine, or any other place the exclusive jurisdiction of which is ceded to the United States. Cognizance in criminal cases may also be given to those courts, of offences against the national authority, if properly defined by an act of Congress, when they are committed in violation of such an act passed pursuant to the second section of the third article of the Constitution, which extends the judicial power to all cases in law and equity arising under the Constitution, the laws of Congress, and the treaties therein specified. 1 Whart. Cr. Law (7th ed.), 174–180, inclusive.

Exceptional cases undoubtedly arise where it may properly be said that the citizen owes allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either, where the same act is a transgression and defined offence under the laws of both. Thus, an assault on the marshal or hindering him in the execution of legal process is a high offence against the United States, for which the perpetrator is liable to punishment; and the same act may also be a gross breach of the peace of the State, if it results in a riot, assault, or murder, and may subject the same person to the punishment prescribed by the State laws. *Moore* v. *Illinois*, 14 How. 13.

Federal sovereignty as well as the sovereignty of the States is limited and restricted by the Constitution. Certain powers, legislative, executive, and judicial, are possessed by each, independent of the other; and in the exercise of such powers all agree that they act as separately and independently of each other as if the line of division was traced by landmarks visible to the eye. *Ableman* v. *Booth*, 21 How. 506, 516.

Both governments, though there be but one act, if the jurisdiction is dual, and the act charged is defined by the laws of each as an offence, may subject the offender to punishment; nor can he plead the conviction and sentence in one forum in bar to an indictment in the other, as the act committed was an offence against the authority of each. *Fox* v. *The State of Ohio*, 5 How. 410 ; *United States* v. *Marigold*, 9 id. 560.

Passing and uttering counterfeit coin was the charge in the first case, and it appears that the defendant, having been convicted in the State court, removed the cause into this court, and assigned for error that the court below had no jurisdiction of the offence ; but this court held that the State law was valid, that offenders falling within the power of different sovereignties may be triable in each for the same act, and may properly be subjected to the penalties which each assigns to the perpetration of the act. When carefully examined, it will be found that the second case decides the same point in the same way, — that the same act may in certain cases constitute an offence against both the State and the United States, and that it may draw to its commission the penalties denounced by each for the commission of the act. *United States* v. *Amy*, 14 Md. 135, n., per Taney, C. J. ; Cooley, Const. Lim. (4th ed.) 25.

Viewed in the light of these suggestions, it seems reasonable to conclude that Congress might define the malicious killing of a revenue collector with malice aforethought, while in the performance of his official duties, as murder, and might make provision for the trial and punishment of the offender, even though the homicide was committed at a place within the exclusive jurisdiction of the State. Congress may provide for the appointment of officers to collect the public revenue, and, if so, they may pass constitutional laws for their protection ;

but Congress has not defined the act charged in the State indictment as an offence against the authority of the United States, nor does any act of Congress prescribe the punishment to be inflicted for its commission, or declare what court shall have jurisdiction of the offence.

Ample power, it was conceded, was vested in Congress to provide for the punishment of murder committed by a person serving on board a public ship of war, wherever the ship might be ; but inasmuch as Congress had not defined the act of killing at that place as a crime, nor affixed a punishment to it, nor declared the court that should have jurisdiction of the offence, this court unanimously decided, Marshall, C. J., giving the opinion, that a murder committed on board a ship of war lying within the harbor of Boston was not cognizable in the Circuit Court of the District of Massachusetts, and the case was remanded with a certificate to that effect. *United States* v. *Bevans*, 3 Wheat. 336, 391.

Since that decision the law has been considered as settled that the circuit courts have no jurisdiction to try and sentence an offender, unless it appears that the offence charged is defined by an act of Congress, and that the act defining the offence, or some other act, prescribes the punishment to be imposed, and specifies the court that shall have jurisdiction of the offence. *United States* v. *Wiltberger*, 5 id. 76.

Homicide resulting from the acts of a party in opposing an officer, employed in the enrolment of men for the military service during the late rebellion, was defined by an act of Congress to be murder and punishable with death ; and the same section enacted that the conviction of the party of that offence in the Circuit Court should not relieve him from liability for any crime committed by him against the laws of the State. 13 Stat., p. 8, sect. 12 ; *United States* v. *Gleason*, 1 Woolw. 75 ; *Same* v. *Same*, id. 128.

Decided cases everywhere hold. that unless Congress first defines the offence, affixes the punishment, and declares, in some way, the court that shall have jurisdiction of the accusation, the Circuit Court can neither try the accused nor sentence him to punishment. Even the power of Congress to define offences and provide for the punishment of offenders is limited

to such subjects and circumstances as relate and are peculiar to the Federal government. Money may be coined by that government, and therefore Congress may provide for the punishment of counterfeiting the national coin. Congress may establish post-offices and post-roads, and therefore the Legislative Department may pass laws providing for the punishment of persons robbing the mails; but the Congress cannot enact laws for punishing persons for counterfeiting State bank issues, or for robbing express companies established by State authority. *United States* v. *Ward*, id. 17, 20.

Offices may be created by a law of Congress, and officers to execute the duties of the same may be appointed in the manner specified in the Constitution; and it is not doubted that Congress may pass laws for their protection, and for that purpose may define the offence of killing such an officer when in the discharge of his duties. Concede that, and it follows that if the punishment for the offence is affixed, and the jurisdiction is given to the circuit courts, those courts may try the offender, if legally indicted, and if duly convicted may sentence him to the punishment which the act of Congress prescribes. Beyond all question, the jurisdiction of the Circuit Court over such an indictment would be complete; but the difficulty in the way of the prosecutor in this case is that there is no act of Congress defining the offence charged in the indictment, nor is there any provision in such law providing for the punishment of such an offence, or which gives the Circuit Court or any other Federal court jurisdiction to try or sentence the offender.

Enough appears in these observations to show that, even if the indictment in this case had been found against a citizen of the State for murdering the revenue officer while engaged in the discharge of his official duties, the Circuit Court would not, under existing laws, have jurisdiction to try and sentence the offender, for the reason that the offence is not defined by any act of Congress, nor is there any act of Congress giving such jurisdiction to the circuit courts.

Judicial authorities to that effect are numerous and decisive; but the principal question in this case is of a very different character, as the indictment is against the officer of the revenue

for murdering a citizen of the State, having in no way any official connection with the collection of the public revenue. Neither the Constitution nor the acts of Congress give a revenue officer or any other officer of the United States an immunity to commit murder in a State, or prohibit the State from executing its laws for the punishment of the offender.

Unquestionable jurisdiction to try and punish offenders against the authority of the United States is conferred upon the circuit and district courts; but the acts of Congress give those courts no jurisdiction whatever of offences committed against the authority of a State. Criminal homicide, committed in a State, is an offence against the authority of the State, unless it was committed in a place within the exclusive jurisdiction of the United States. Congress has never defined such an offence when committed within the territorial limits of a State under the circumstances described in the transcript; nor is there any pretence for the suggestion either that the circuit or district courts have any jurisdiction of the case, or that there is any conflict of jurisdiction between the judicial authorities of the State and those of the United States.

Matters of fact are not in dispute; and it appears by the record that the prisoner, at the time mentioned in the petition, was duly indicted of the crime of wilful murder, with malice aforethought, by the grand jury of the county where the homicide was committed, and that the indictment is still pending in the proper court of the State where it was filed. Adjudged cases are not necessary to show that no Federal court created by Congress had jurisdiction of the offence, as the homicide was committed on land within the State, and not within any place over which the United States had exclusive jurisdiction. None of these matters can be successfully controverted; and, if not, then it follows that the exclusive jurisdiction of the offence was vested in the State court, unless it can be held that the prisoner, merely because he was a deputy collector of the revenue, is privileged to remove the State indictment found by the grand jury of the State into the Circuit Court for trial.

Nobody before ever pretended that such an offence ever was or could be defined by an act of Congress as an offence against

the Federal authority, or that the Circuit Court or any other Federal court has or ever had any jurisdiction of such a case to try or sentence such an offender for such an offence. Federal courts have no common-law jurisdiction in criminal cases, nor can such courts proceed to try or punish any offender, except when authorized by an act of Congress, passed in pursuance of the Constitution. *State of Pennsylvania* v. *Wheeling Bridge Co.*, 13 How. 518, 563; *United States* v. *Worral*, 2 Dall. 384, 393; Cooley, Const. Lim. (4th ed.) 26; *Ex parte Bollman*, 4 Cranch, 75, 98.

Murder is defined by the law of the State as follows: If any person of sound memory and discretion unlawfully kill any reasonable creature, in being and under the peace of the State, with malice aforethought, either express or implied, such person shall be guilty of murder. 3 State Stat. 43. When perpetrated by means of poison, lying in wait, or by any other kind of wilful, deliberate, malicious, and premeditated killing, or in the perpetration of or attempt to perpetrate certain other enumerated crimes, it is murder in the first degree; and the petition of the prisoner, in this case, shows that the charge against him is murder in the first degree, as defined by the State statute.

Such an offence has never been defined by an act of Congress, when committed against the authority of the State, nor even when committed against the national authority, unless when the killing was perpetrated on navigable waters, out of the jurisdiction of any particular State, or in some place within the exclusive jurisdiction of the Federal authority.

Crimes defined by an act of Congress, and within the jurisdiction of the Federal courts, may be divided into two general classes: 1. Such as are committed on the high seas or on navigable waters out of the jurisdiction of any particular State, or within some place under the exclusive jurisdiction of the United States. 2. Such as relate to subjects committed to the charge of the nation, which are comprised within the grant of judicial power over all cases arising under the Constitution, laws, and treaties of the United States, and cases affecting ambassadors or other public ministers and consuls.

Under existing laws the *circuit courts* have no jurisdiction

whatever to re-examine the judgments of the State courts in any case, civil or criminal, the power to exercise such a revision even in civil cases involving Federal questions, being vested exclusively in the Supreme Court. Neither the Supreme Court nor the circuit courts can re-examine the conviction, sentence, or judgment of the District Court in a criminal case in any form, either by writ of error or appeal. Final judgments or decrees of a State court falling within the condition specified in the twenty-fifth section of the Judiciary Act, or the second section of the act passed to amend the prior act upon the subject, may be re-examined and reversed or affirmed in the Supreme Court upon a writ of error. 14 Stat. 386 ; Rev. Stat. sect. 709.

Appellate power in criminal cases decided in the district and circuit courts has not been vested in the Supreme Court by any act of Congress, and of course the power of the court in respect to such cases pending in those tribunals is confined to certificates of division of opinion. *United States* v. *More*, 3 Cranch, 159 ; *Ex parte Kearney*, 7 Wheat. 38 ; *Ex parte Watkins*, 3 Pet. 193. Grant that, but Federal judicial power extends to all cases in law or equity arising under the Constitution, the laws of the United States, and treaties made or which shall be made under their authority, and every such question may be re-examined by writ of error in the Supreme Court under the act of Congress passed as a substitute for the before-mentioned section of the Judiciary Act.

Cases which involve some one or more of those questions are often presented in the State courts ; and where that occurs and the decision is adverse to the party setting up the title, right, or exemption, whether the suit be a civil or criminal one, he may, when the case is determined by the highest court of the State, sue out a writ of error and remove the cause into the Supreme Court for re-examination. *Murdock* v. *Memphis*, 20 Wall. 590, 636.

Writs of error of the kind are within every day's experience ; but the rule is universal that, if the transcript when entered here does not present a Federal question for re-examination, the case will be dismissed, which shows to a demonstration that it is only the questions which arise under the Constitution,

the laws of the United States, and treaties made under their authority which this court is authorized to re-examine.

Convincing support to that proposition is found in the countless cases which this court dismisses at every session for the want of jurisdiction, the invariable rule being that, if the transcript does not exhibit some one of the questions specified in the section to which reference has been made, the case must be dismissed. 1 Stat. 85, sect. 25 ; 14 id. 386, sect. 2. Process to remove the judgment or decree from the State court to the Supreme Court is not allowed as matter of right. Instead of that, the practice is to submit the record of the State court to a justice of the Supreme Court, whose duty it is to ascertain whether, in his opinion, any question cognizable in the appellate tribunal is involved and was decided by the proper State court in a way to justify the allowance of the writ, and, if not, to refuse to direct that it shall be issued.

Two other differences between the writ of error to the State court and the common-law writ issued under the twenty-second section of the Judiciary Act deserve to be noticed. By the twenty-second section no case is re-examinable unless the matter in dispute exceeds the sum or value of a prescribed amount ; but the section granting the writ of error to the State court makes no reference to the value involved in the controversy, the condition being that some one of the questions specified in the section must have been raised and decided adversely to the applicant for the writ. They also differ in this, that the twenty-second section confines the appellate power to final judgments and decrees in civil cases, but the other provision, when the proper case is presented, extends to criminal as well as civil cases. *Twitchell* v. *The Commonwealth,* 7 Wall. 321 ; Phillip's Prac. (rev. ed.) 144.

Where the matter in dispute is sufficient in value, the common-law writ of error to the Circuit Court will lie in every case, if the judgment is final in the court to which the writ of error is addressed ; but the writ of error to the State court will not lie at all, unless the construction of some clause of the Constitution, or some act of Congress, or treaty, is drawn in question, and the decision was adverse to the party setting up such right or title. If those conditions concur, the writ will lie,

irrespective of the amount in dispute, provided it appears that the right or title set up depends on the construction of the Constitution, an act of Congress, or some constitutional treaty. *Williams* v. *Norris*, 12 Wheat. 117.

Power to re-examine such cases arises under that clause of the Constitution which provides that the judicial power of the United States shall extend to all cases in law or equity arising under the Constitution, the laws of the United States, and treaties made or which shall be made under their authority.   State courts have no jurisdiction whatever of cases affecting ambassadors, other public ministers, or consuls, nor of cases of admiralty and maritime cognizance.   In all cases affecting ambassadors, other public ministers, and consuls, and those in which a State shall be a party, the Supreme Court, as the Constitution provides, "shall have original jurisdiction."   In all other cases mentioned in the article of the Constitution granting judicial power, the provision is that "the Supreme Court shall have appellate jurisdiction both as to law and fact, with such exceptions and under such regulations as the Congress shall make."

Early legislation of Congress gave the circuit courts original cognizance concurrent with the several States of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, and the United States are plaintiffs or petitioners, or an alien is a party, or the suit is between a citizen of a State where the suit is brought and a citizen of another State. 1 Stat. 78.

By the same section it is also provided to the effect, as before explained, that the circuit courts shall also have exclusive cognizance of all crimes and offences *cognizable under the authority of the United States*, except as therein otherwise provided.

Jurisdiction both of civil and criminal cases is, beyond doubt, conferred upon the general government by several of the clauses of the third article of the Constitution describing the judicial power, entirely exclusive of that possessed by the tribunals of the States; but it is equally clear that none of them, except the introductory clause of sect. 2 of that article,

authorize any Federal court to re-examine the judgment of a State court in a criminal case, or to supersede the power of a State court to exercise its lawful jurisdiction in such a case.

When the judicial system was organized under the Constitution, Congress provided, in the twenty-fifth section of the Judiciary Act, that cases falling within that clause of the judicial article of the Constitution might be reversed or affirmed upon a writ of error, in the same manner and under the same regulations as if the judgment or decree had been rendered or passed in the Circuit Court. For eighty years that provision remained without any alteration ; and the new provision, so far as respects the question before the court, is exactly the same as the original enactment.   1 Stat. 85 ; 14 id. 386.

Earnest opposition was made to that provision when it first went into operation, and it continued to increase until it culminated in two important cases reported in the volumes containing the decisions of the Supreme Court of that period.   *Martin v. Hunter's Lessee,* 1 Wheat. 304, 323 ; *Cohens* v. *Virginia,* 6 id. 264, 375.

Attempt is made in argument to support the proceeding in this case, by which the indictment was removed from the State court into the Circuit Court, and the refusal of the Circuit Court to remand the same by the judgment of the Supreme Court in those two cases ; but it is clear that those judgments do not afford any justification either for the proceeding or the refusal to remand, as both were transferred into the Supreme Court by writ of error under the twenty-fifth section of the Judiciary Act.   Both of those cases were rightfully removed into the Supreme Court under that section of the Judiciary Act, as appears by the respective transcripts annexed to the writs of error, and as appears by the countless cases since decided by this court, and a great number, probably more than one hundred, standing on the docket of the present term for re-examination.

Nor is it necessary to look beyond these cases to establish the proposition that they were re-examined under the twenty-fifth section of the Judiciary Act.   Take the first case.   It was an action of ejectment brought in a subordinate State court,

for the recovery of a large parcel of land situated in that part of Virginia then called the Northern Neck. Service was made, and the defendant, Martin, appeared and pleaded the general issue upon the usual terms of confessing lease, entry, and ouster. Title was claimed by the defendant under a royal grant made prior to the Revolution, and he claimed that his title was protected by the treaty. Leave of court being obtained, the parties agreed as to the facts, and the subordinate court rendered judgment in favor of the plaintiff. Prompt appeal was taken by the defendant to the Court of Appeals, and the appellate court reversed the judgment of the court of original jurisdiction, and rendered judgment for the defendant.

Dissatisfied with the judgment of the Court of Appeals, the plaintiff sued out a writ of error under the twenty-fifth section of the Judiciary Act, and removed the cause into this court, where the judgment of the Court of Appeals was reversed. Pursuant to the usual course, this court sent down its mandate to the Court of Appeals, which that court refused to execute. No new proceedings took place, but a new writ of error was sued out, and the opinion of the court as reported is the one given in the case when brought here under the second writ of error.

Aid and comfort are attempted to be derived from certain remarks of the court in that case, as warranting the proceedings in the case before the court; but it is clear that they cannot have any such effect, as no such question was involved in the case, and of course the remarks of the court must be understood as applicable only to the matter then in decision. Important Federal questions were involved in the case; and we have the authority of the justice who delivered the opinion for saying that the judgment drew in question and denied the validity of a statute of the United States, as appeared on the face of the record, and the court also held that the principles and rules of decision to be applied under the second writ of error were the same as under the first, when the mandate was sent down.

Comment upon the opinion of the court in the second case is hardly necessary, as it does not appear to contain any thing relating to the present theory of the government, except that

it proves, what everybody admits, that a writ of error under the twenty-fifth section of the Judiciary Act will lie, in a proper case and when the question is properly presented, as well in a criminal as in a civil case, irrespective of the amount in controversy.

Cohens was prosecuted in a State court for vending and selling lottery-tickets contrary to the statute of the State. Regular process issued and he was arrested, and the parties entered into an agreed statement of facts. Authority was given to the city of Washington, under an act of Congress, to permit the drawing of lotteries for effecting certain improvements in the city, and the defendant, besides pleading the general issue, pleaded a justification under the act of Congress. Extended hearing was had, and the State court rendered judgment against the defendant, and he sued out a writ of error under the twenty-fifth section of the Judiciary Act, and removed the cause into this court.

Due appearance was entered for the State, and her counsel moved to dismiss the case for want of jurisdiction. Three causes were assigned in the motion for the dismissal of the writ of error: 1. That a State is the defendant. 2. That no writ of error lies from this court to a State court. 3. That the Supreme Court had no right to review the judgment of the State court, because neither the Constitution nor any law of the United States had been violated by the judgment of the State court.

Extreme views were advanced on behalf of the State, among which was the proposition that the Constitution did not provide any tribunal for its final construction, and that in the last resort the courts of the respective States may exercise that power. Responding to that extraordinary proposition, Marshall, C. J., speaking for the court, said that jurisdiction is given to the courts of the Union in two classes of cases. In the first, their jurisdiction depends on *the character of the cause*, whoever may be the parties, and comprehends "all cases in law and equity arising under the Constitution, the laws of the United States, and treaties made or which shall be made under their authority;" and, he added, that that clause extends the jurisdiction to all the cases described, without making in its

terms any exception whatever, and without any regard to the condition of the party.

His description of the second class is, that it comprehends controversies between two or more States, between a State and a citizen of another State, and between a State and foreign States, citizens, or subjects. Of course the second proposition of the Chief Justice must be subject to what is ordained in the Eleventh Amendment to the Constitution. 2 Story, Const., sect. 1724.

Original jurisdiction is vested in the Supreme Court in certain enumerated cases, and the Constitution also gives the same tribunal appellate jurisdiction in all other specified cases. Among those in which the jurisdiction must be exercised in the appellate form are cases arising under the first clause of the second section, including such as relate to the construction of the Constitution, the acts of Congress, and treaties. If a State is a party, the jurisdiction is original, except when the cases arise under the first clause of the second section, in which event the jurisdiction is appellate, as in such a case the jurisdiction can only be practically exercised in that form. Where a State is a party, and the case is such as to admit of its originating in the Supreme Court, in the opinion of the Chief Justice as there expressed, the case ought to originate in the Supreme Court; but where, from the nature of the case, it cannot originate here, he holds that the proper construction of the clause is that the jurisdiction is appellate.

When correctly understood, it is clear that the second case cannot have any tendency whatever to support the proposition that an indictment for wilful and felonious murder with malice aforethought, pending in a State court and found by a grand jury of the State under a statute of the State, not involving any Federal question, may be removed from the State court into the Circuit Court for trial merely because the prisoner at the time he committed the homicide was a deputy collector of the internal revenue.

Such a proposition, unsupported as it is by any respectable judicial authority, is only calculated to excite amazement, as the case cited is a direct and conclusive authority the other way, showing to a demonstration that the Federal courts cannot exer-

cise any jurisdiction whatever in a criminal case properly pending in a State court, unless it involves some question arising under the first clause of the second section of the article describing the judicial power conferred by the Constitution.    2 Story, Const., sects. 1721, 1740; 1 Kent, Com. (12th ed.) 299; Sergeant, Const., 59; Curtis, Com., sect. 9; Pomeroy, Const. (2d ed.), sect. 760.

Commentators on the Constitution seem to agree that Congress enacted the twenty-fifth section of the Judiciary Act in order to define the classes of cases originating in State tribunals to which the appellate power of the national courts might extend by means of the writ of error, to preserve the supremacy and to secure the uniform construction of the Constitution, acts of Congress, and international treaties.    Curtis, Com., sect. 210.

All agree that the original jurisdiction of the Supreme Court is defined and limited by the Constitution, and that it can neither be extended nor restricted by an act of Congress; and it is equally undeniable that the appellate jurisdiction of that tribunal is granted subject to such exceptions and regulations as the Congress may make, from which it follows that appellate jurisdiction can only be exercised by the Supreme Court in such cases and to such extent as the acts of Congress authorize. *Wiscart* v. *Dauchy*, 3 Dall. 321, 327; 1 Kent, Com. (12th ed.) 324; *Clarke* v. *Bazadone*, 1 Cranch, 212.

Acts of Congress having been passed providing for the exercise of appellate judicial power, the established rule is that the affirmative description of the cases in which the jurisdiction may be exercised implies a negative on the exercise of such power in all other cases. *Durousseau* v. *The United States*, 6 Cranch, 307, 314; *United States* v. *More*, 3 id. 159, 170.

Legislative power is undoubtedly vested in Congress to pass laws to define and punish offences against the authority of the United States; but it does not follow by any means that a prisoner charged with murder committed in violation of the laws of a State may claim to be tried in a Federal circuit court, or that a State indictment for such an offence constitutes a case arising under the Constitution or the laws of the United States, or that it can in any way become cognizable in such

a tribunal, certainly not unless it can be removed there in pursuance of some act of Congress defining the offence and providing for the trial and punishment of the offender.   Persons charged with offences against the authority of the States find ample guaranties of a fair trial in the laws of the States and the usages of the State courts, and if the Federal officers need more, it belongs to Congress to provide the remedy in some mode authorized by the Constitution.   1 Kent, Com. (12th ed.) 340.

Adjudged cases admit that the power of removal instead of the writ of error, as prescribed in the twenty-fifth section of the Judiciary Act, may also be exerted when the subject-matter of the suit is such as to bring the case within the first clause of the second section of the article describing the Federal judicial power.   Frequent cases of the kind of a civil nature arise, and if they could not be transferred to the circuit courts by removal under proper regulations, it might often happen that the object intended to be accomplished by the appellate tribunal would be defeated.   Appellate power in the cases mentioned in the provision before referred to is given in the Constitution, and it is left to Congress to enact the manner of its exercise.   Curtis, Com., sect. 148 ; *Martin* v. *Hunter's Lessee*, 1 Wheat. 304, 349.

Whether the appellate power is employed by removal or writ of error, the right and extent of jurisdiction is the same ; and in both the extent is limited by the constitutional grant, and cannot be extended beyond cases in law and equity arising under the Constitution, the acts of Congress, and such treaties as are therein described.

Legislative provision of a restricted character for the removal of civil causes from the State courts into the circuit courts was made by the Judiciary Act which was passed to organize our judicial system.   1 Stat. 79.   Since that many other acts of Congress have been passed upon the subject, by which the power in civil cases has been very much enlarged.   Proceedings were also prescribed by a later act, not now in force, which authorized the officers appointed for the collection of the customs to remove any suit or prosecution commenced or pending against them in a State court, for acts done by them

as such officers or under color of their respective offices, into the Circuit Court for trial; but the court is not furnished with any evidence that any such jurisdiction was ever exercised by the Circuit Court under that enactment in a criminal prosecution. 3 Stat. 198.

Special reference is also made to the second section in the still later act of Congress, usually denominated the Force Bill. 4 Stat. 632. Jurisdiction of the circuit courts was by that section extended to all cases in law and equity arising under the revenue laws, for which other provisions are not already made by law, and provision was made to the effect that any revenue officer injured in his person or property, on account of any act done by him for the protection of the revenue, might maintain a suit for such damages in the Circuit Court for the district where the wrong-doer resided.

Property taken or detained by a revenue officer was declared to be irrepleviable, and that it should be deemed in the custody of the law and subject only to the orders and decrees of the Federal court having jurisdiction of the same. Offenders who should dispossess or rescue, or attempt to dispossess or rescue, any property so taken or detained were to be deemed guilty of a misdemeanor, and punished as therein directed.

Sect. 3 of the same act empowered any such revenue officer to remove any suit or prosecution commenced against him in a State court, on account of any act done by him for the protection of the revenue, into the proper circuit court, for trial in the mode therein prescribed.

. Properly construed, the act, as originally passed, was intended to furnish protection to the officers engaged in collecting import duties, and a subsequent act provided that it should not be so construed as to apply to cases arising under the internal-revenue acts. Unlike that, the fiftieth section of the act to increase duties on imports extended the provisions of the act to cases arising under the laws for the collection of internal duties. Had legislation stopped there, it would be correct to say that the Force Bill is still in force; but the still later act, passed July 13, 1866, repealed that section altogether, subject to a proviso inapplicable to the present case. *Philadelphia* v. *Collector*, 5 Wall. 728; 13 Stat. 241; 14 id. 172;

*Hornthall* v. *Collector*, 9 Wall. 560, 566; *Assessors* v. *Osborne*, 9 id. 567, 573.

Much stress in the argument was laid upon the word "prosecution," found in the third section of the act; but neither the written nor the oral argument furnished any evidence to show that any indictment found in the State where the difficulty arose which induced Congress to pass the act was ever removed from the State court into the Circuit Court for trial, and it is well known as a historical fact that no such removal of an indictment in that State was ever made. Civil cases pending in the tribunals of other States were in several instances removed under that act into the Circuit Court, and were there adjudicated to final judgment; but there is no authentic account that any State indictment for an offence against the authority of a State was ever removed under that act into the Circuit Court for trial or sentence.

Grave doubts are entertained whether the Congress, in the use of the word "prosecution," intended to extend the operation of the act to such an indictment, as ample provision existed at the time of its passage for the re-examination of every question of Federal cognizance arising on the trial of such an indictment, by a writ of error sued out pursuant to the authority given in the twenty-fifth section of the Judiciary Act. 1 Kent, Com. (12th ed.) 219.

Litigations of a civil nature, even when the jurisdiction of the Circuit Court depends entirely upon the character of the parties, may, under regulations enacted by Congress, be removed from the State court into the Circuit Court for trial; but there is no just pretence that a State indictment for an offence against the authority of the State can be removed from the State court where found into the Circuit Court for trial in any form of proceeding, unless the case, whether a suit at law or in equity, involves some question arising under the Constitution, the laws of Congress, or treaties made, or which shall be made, under their authority. *Com.* v. *Casey*, 12 Allen, 214, 217.

Nothing is contained in the section which has any tendency to support the opposite construction, except the words "suit or prosecution;" and it should not be overlooked that it employs

no words exclusively applicable to an indictment, and contains many expressions utterly repugnant to the theory that the proceedings to effect the removal of process were intended to extend to a criminal and indictable offence.

Every word of the section speaks a different intent, is as conclusively shown by the distinguished judge who gave the opinion of the court in the case last cited. Confirmation of that view is also derived from the fact that every reported case, where the removal was effected under that act, was a civil action, as appears from the following examples: *Wood* v. *Matthews*, 2 Blatch. 370; *Murray* v. *Patrie*, 3 id. 342; *Fisk* v. *The Union Pacific Railroad Co.*, 6 id. 362; s. c. 8 id. 243; *Tod, Relator*, v. *Fanfield Com. Pleas*, 15 Ohio St. 377, 387.

Formal application to the Supreme Court of Maine was made under that act of Congress to remove an indictment for an offence against the authority of the State into the Circuit Court of the district for trial, but the court unanimously denied the application, for the same reasons as those given by the Supreme Court of Massachusetts in the case before cited. *State* v. *Elder*, 54 Me. 381.

Taken together, these two cases ought to be regarded as decisive that a State indictment for an offence against the authority of the State could not be removed from the State court, under that act of Congress, into the Circuit Court for trial. Subordinate Federal courts find no other rules to guide them in the exercise of their functions than are to be found in the acts of Congress, and they can have no other recourse than to those enactments to determine what constitutes an offence against the authority of the United States. Conkling's Treatise (5th ed.) 181. Offences against the nation are defined and their punishment prescribed by acts of Congress. Cooley, Const. Lim. (4th ed.) 26.

Like power was given to the defendant, by the act relating to *habeas corpus*, for the removal into the circuit courts, after judgment of suits or prosecutions commenced in a State court against officers, civil or military, for acts done or committed by virtue of an order of the President, or pursuant to an act of Congress. 12 Stat. 756.

Pending an action in a State court against a marshal, in

which the verdict and judgment were in favor of the plaintiff, the defendant instituted proceedings in the State court for the removal of the cause into the Circuit Court, but the State court refused to send up the case.   Thereupon the Circuit Court issued an alternative *mandamus* to the State court, which was followed by the peremptory process, when the plaintiff sued out a writ of error, and removed the cause into this court. Due hearing was had here, and this court *unanimously* held that so much of the act as provided for the removal of a judgment in a State court, in which the issue was tried by a jury, is not in pursuance of the Constitution, and is void. *The Justices* v. *Murray*, 9 Wall. 274; *McKee* v. *Rains*, 10 id. 22, 25.

Governed by that rule of decision, it must be considered that the power of removal, when the facts have been found by a jury, cannot be exercised in such a case after judgment.

Statutory power to remove an action from a State court into the circuit, says Judge Story, if it exists before judgment because it is included in the appellate power, must exist after judgment for the same reason, as he held that the same objection exists as to the removal before judgment as after, and that both must stand or fall together.   *Martin* v. *Hunter's Lessee*, 1 Wheat. 304, 349; 2 Story, Const., sect. 1745.

None of the advocates of the power of removal as applied to criminal cases pretend that it may be exercised after judgment in any other mode than by a writ of error; from which it would seem to follow, if the authorities cited are good law, that a State indictment for an offence against the authority of the State cannot be removed at all into the Circuit Court for trial, nor into the Supreme Court, except by writ of error.

Sect. 643 of the Revised Statutes, under which the removal in this case was made, is a revision of the sixty-seventh section of the act to reduce internal taxation.   14 Stat. 171.   Officers appointed under that act may, before trial, in any case, civil or criminal, where suit or prosecution is commenced against them in a State court, remove the said suit or prosecution into the Circuit Court for trial.   Rev. Stat. 643.

Further remarks in exposition of the enactment seem to be unnecessary, as it is clear that it is in all essential respects the

same as its predecessors, some of which were passed and went into operation even before the actual close of the second war of Independence.

Considering the long period the provision has been in operation, it would naturally be expected, if it was intended by its framers to include State indictments pending in State courts for offences against the authority of the State, that the advocates of such a construction would be able to produce some authoritative exposition of the enactment to support such an improbable and extraordinary theory. Nothing of the kind is produced, and for the best possible reason, that no removal of such an indictment from a State court into the Circuit Court for trial was ever before made in our judicial history.

Should it be suggested that a recent case, cited in the brief for the prisoner, is a precedent where a criminal case was removed from a State court into the Circuit Court for trial, the answer to the suggestion is, that the case does not support the proposition, for several reasons: 1. Because the order of removal was never carried into effect. 2. Because nothing was done in the Circuit Court except to pass the order for removal. 3. Because the opinion of the court as reported admits that the circuit courts have no power to try offences against the peace and dignity of the State, nor to control the State courts in any such case. 4. Because the court admit in that case that no man charged with an offence against the authority of the State can defend himself by the fact that he is a Federal officer. 5. Because it does not appear that the State indictment was ever transferred into the Circuit Court for trial. 6. Because it appears that the court giving the opinion in. that case entirely overlooked the settled rule that the circuit courts have no jurisdiction of any act of an individual as an offence, unless the same is defined as such by an act of Congress, nor unless some act of Congress prescribes the punishment annexed to the commission of the offence, and designates the court to try and sentence the offender. 7. Because the indictment, for-aught that appears to the contrary, is still pending in the State court, the report failing to show that it has ever been in fact transferred into the Circuit Court. *State* y. *Hoskins*, 77 N. C. 530, 546.

Viewed in, any light, the proposition to remove a State indictment for felony, from a State court having jurisdiction of the case, into the Circuit Court, where it is substantially admitted that the prisoner cannot be tried until Congress shall enact some mode of procedure, approaches so near to what seems to me both absurd and ridiculous, that I fear I shall never be able to comprehend the practical wisdom which it doubtless contains. Were the object to give felons an immunity to commit crime, and to provide a way for their escape from punishment, it seems to me that it would be difficult to devise any mode more effectual to that end than the theory embodied in that proposition.

Difficulties almost without number would arise if any attempt should be made to try such an indictment in a circuit court.

It was suggested at the argument that the attorney-general of the State might appear in the Circuit Court as the public prosecutor, but he may not deem it any part of his duty to conduct criminal prosecutions in any other tribunals than those of the State from which he received his commission. Public prosecutions against the authority of the United States are in the circuit courts within the exclusive direction of the district attorneys, but they have nothing to do with prosecutions against the statutes, peace, and dignity of a State. *Confiscation Cases*, 7 Wall. 452.

Service of process is often required in a criminal case, and the question would arise whether it should be made by the sheriff or marshal. Subpœnas must be issued, and the inquiry would arise whether they should be issued in the name of the State or of the President. Expenses must be incurred for the service of process and for the travel and attendance of witnesses, and it would at once become a question whether the amount would be chargeable to the United States or to the State, and if to the latter, may the State be compelled to respond to the claim.

Persons indicted of murder and other high crimes are entitled to a copy of the indictment and process to compel the attendance of witnesses, and the inquiry arises whether it would be the duty of the Circuit Court clerk or the clerk of the State

court to comply with that constitutional requirement. Under the State law the prisoner, if the charge is of felony punishable with death, is entitled to thirty-five challenges, whereas under the act of Congress he is entitled only to twenty; and the inquiry would immediately arise, whether the right of the prisoner in that regard must be governed by the act of Congress or the State law. 2 State Stat., sect. 4014; Rev. Stat., sect. 819.

By the common law it was error, for which the judgment might be reversed, if the clerk did not in capital felonies inquire of the prisoner before sentence whether he had any thing to say why judgment of death should not be pronounced against him; and the question would arise whether this inquiry should be made by the clerk of the State court whose laws were offended by his crime, or by the clerk of the Circuit Court to which the indictment had been transferred. 1 Chitty, Cr. Law, 700, 717.

Juries in the Federal courts are not the judges of the law as well as the fact, consequently they are usually sworn in capital cases that they will well and truly try and true deliverance make of the prisoner they have in charge, according to the law and the evidence. Where such is the practice the question will arise whether the law referred to is Federal or State law, or both combined, including the common law, as is suggested for the other rules of decision in conducting the trial.

State rules of evidence or of procedure, adopted since the passage of the act of Congress organizing the Federal courts, do not apply in criminal cases where the indictment is found in the circuit courts; and the question may immediately arise, which system of evidence and of procedure will furnish the rule of decision where the indictment is found in the State court and the prisoner is tried in the Circuit Court. *United States* v. *Reid*, 12 How. 361, 365.

It was in view of these and many other equally embarrassing questions which might be suggested that induced Judge Story to remark, in one of his leading judgments upon the subject, that in respect to criminal prosecutions the difficulty seems admitted to be insurmountable, which is fully equivalent to a

declaration that the power of removal in such a case does not exist. *Martin* v. *Hunter's Lessee*, 1 Wheat. 304, 349.

Ingenious effort was made in the argument at the bar to show that such was not the meaning of the learned justice when he gave utterance to that important qualification to his antecedent remarks in the same connection; but the effort is in vain, as the same learned magistrate made the same admission in his valuable Commentaries on the Constitution, published nearly twenty years later. 2 Story, Const. (3d ed.), sect. 1746.

Whether conclusive or not, it must be conceded that great weight is due to those admissions, and they are also much strengthened by a similar admission in the commentaries of another learned writer upon constitutional law. Curtis, Com., sect. 15.

Embarrassing questions, it is admitted, may arise in the exercise of such a peculiar and hitherto unknown jurisdiction; but the attempt is made to furnish a panacea for them all by referring to sect. 722 of the Revised Statutes, which seems to contemplate that where the laws of the United States are insufficient to define offences and punish offenders, resort may be had to the common law as modified and changed by the State wherein the Federal court exercising jurisdiction is held, both in the trial of the accused and in the infliction of punishment.

Examined in the most favorable light, the provision is a mere jumble of Federal law, common law, and State law, consisting of incongruous and irreconcilable regulations, which in legal effect amounts to no more than a direction to a judge sitting in such a criminal trial to conduct the same as well as he can, in view of the three systems of criminal jurisprudence, without any suggestion whatever as to what he shall do in such an extraordinary emergency if he should meet a question not regulated by any one of the three systems.

Unless some better remedy than what is contained in that section can be found it seems to me that it would be better to close the discussion without suggesting any, as it is plain that there is nothing in that enactment which will enable the judge sitting in such a criminal trial to solve any considerable number of the embarrassing questions, which it may well be expected will arise in the trial of such a criminal case.

State police in its widest sense comprehends the whole system of internal regulation by which the State seeks not only to preserve the public order and to prevent offences against her authority, but also to establish for the intercourse of one citizen with another those rules of justice, morality, and good conduct which are calculated to prevent a conflict of interests and to insure to every one the uninterrupted enjoyment of his own, as far as is reasonably consistent with a like enjoyment of equal rights by others. Public police is in effect defined by the great commentator of the common law as the due regulation of domestic order, whereby the citizens of a State are bound to conform to the rules of propriety and good conduct, and to be moral, industrious, and inoffensive in their respective stations. 4 Bl. Com. 162.

Police, says Bentham, is a system of precaution, either for the prevention of crimes or calamities; and he divides the subject into many heads, of which three only will be mentioned: 1. Police for the prevention of offences. 2. Police for the prevention of calamities. 3. Police for the prevention of endemic diseases. Bentham's Works, title Offences against Police, vol. iii. p. 169, Edinburgh ed.

Unlike the conceded right to appropriate private property when the public exigency requires it, the power in question is one, says Shaw, C. J., vested in the legislature to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the State and of the subjects of the same. *Commonwealth* v. *Alger*, 7 Cush. 53, 85.

It extends, says another eminent judge, to the protection of the lives, limbs, health, comfort, and quiet of all persons and of all property within the State, as exemplified in the maxim, *Sic utere tuo ut alienum non lœdas.* *Thorpe* v. *R. & B. R. Co.*, 27 Vt. 140, 147.

Ordinary regulations of police, says Cooley, have been left with the States, nor can it be taken from them and exercised under legislation by Congress. Nor can the national government through any of its departments or officers assume any supervision of the police regulations of the States. All that

the Federal authority can do is to see that the States do not under cover of this power, invade the sphere of national sovereignty, obstruct or impede the exercise of any authority which the Constitution has confided to the nation, or deprive any citizen of rights guaranteed by the Federal Constitution. Cooley, Const. Lim. (4th ed.) 715.

No direct general power over these objects, says Marshall, C. J., is granted to Congress, and consequently they remain subject to State legislation. *Gibbons* v. *Ogden*, 9 Wheat. 203.

Within State limits, says Chase, C. J., an act of Congress upon the subject can have no constitutional operation. *United States* v. *Dewitt*, 9 Wall. 41–45.

Acts of Congress cannot properly supersede the police powers of the State, nor can the police powers of the State override the national authority, as the power of the State in that regard extends only to a just regulation of rights with a view to the due protection and enjoyment of all; and if the police law of the State does not deprive any one of that which is justly and properly his own, it is obvious that its possession by the State and its exercise for the regulation of the actions of the citizens can never constitute an invasion of national jurisdiction or afford a basis for an appeal to the protection of the national authorities.

Startling propositions are advanced in argument; but it is not probable that any one will contend that it would be competent for Congress to define as murder against the authority of the United States the homicide charged in the petition for removal, or that such act of homicide is now defined as murder by any act of Congress now in operation or which was ever passed by the Legislative Department since the Constitution was adopted.

Had the officer been killed, the proposition of removal would be less astonishing than the one set forth in the petition. Judging from the petition, the indictment is against the officer for wilfully, premeditatedly, and deliberately killing and murdering the deceased, against the peace and dignity of the State. No special ground is set forth for the removal nor any thing that can be tortured into a reason for withdrawing the case from the jurisdiction of the State court, unless it be that the

prisoner is a deputy collector of the revenue, and that he alleges in the petition that the killing was in his own necessary self-defence to save his own life, which is a defence that can as well be made in the State court as in the Circuit Court, unless it be assumed that a Federal officer is entitled as a matter of right to transfer every indictment against him for crime, when found in a State court, into a Federal court for trial.

Persons accused of capital or otherwise infamous crimes must be indicted by a grand jury, and when the offence is committed in a State, they must be tried in the State where it was committed; but attention is not called to any article or section of the Constitution that forbids that a Federal officer shall be tried in a State court for murder committed in the open State, against the peace and dignity of the State, and contrary to the form of the State statute defining the offence.

Large concessions were made by the States to the United States, but they never ceded to the national government their police powers or the power to define and punish offences against their authority, as admitted by all courts and all commentators upon the Constitution, which leads me to the following conclusions: 1. That the section of the Revised Statutes in question does not authorize the removal of a State indictment for an offence against the laws of the State from the State court where it is pending into the Circuit Court of the United States for trial. 2. That if it does purport to confer that authority, it is unconstitutional and void. 3. That the answer to each of the three questions certified here from the Circuit Court should be in the negative.