## Case No. 4,792.

### FINDLEY et al. v. SATTERFIELD.

[3 Woods, 504; 7 Cent. Law J. 365; 7 Reporter, 6.][1]

Circuit Court N. D. Georgia. Sept. Term, 1877.

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission. 7 Reporter, 6, contains only a condensed report.]

A. T. Akerman, for petitioners.

R. N. Ely, Atty. Gen. of Georgia, for respondent.

Before WOODS, Circuit Judge and ERSKINE, District Judge.

WOODS, Circuit Judge. The petitioners do not deny that it was lawful for the sheriff to arrest them, and to hold them until the writ of habeas corpus cum causa was served on the superior court of Lumpkin county. But they say that, under the laws of the United States, the effect of that writ, when served, was to remove the indictment, and with it the lawful custody of their persons from that court to this; and that, therefore, the holding of them since by the officer of

that court, the sheriff, has been in violation of the law of the United States. On the other hand, the attorney-general of Georgia, for the respondent, contends that the jurisdiction of Lumpkin superior court over the prosecution, and the attendant right of that court to hold the prisoners for trial, have not been displaced by the proceedings which have been had for removal, because, first, the act of congress which is supposed to authorize those proceedings is not warranted by the constitution of the United States; and, second, that the act, even if constitutional, is not applicable to such cases as the present. He concedes that if the act is constitutional, and is applicable to this case, the custody of the prisoners belongs here, and the sheriff has no right to hold them.

The first question, then, for our consideration, is whether congress has constitutional power to remove from the state courts into the United States courts for trial there, criminal prosecutions under the state laws commenced in the state courts, against persons executing the revenue laws of the United States; for acts done under color of those laws, or on account of rights claimed by such persons under those laws, and to prohibit the state courts from proceeding further with such prosecutions after the prescribed steps for removal have been taken.

If a question of this kind can be settled by the practice of the government, and by the authority of eminent men, the answer must be in the affirmative. The history of the legislation in which congress has undertaken to exercise this power has been brought to our notice. We find that the temporary act of February 4, 1815, approved by President Madison (3 Stat. 195), contained, in section 8, provisions similar to those of section 643 of the Revised Statutes. In January, 1833, President Jackson recommended that congress should re-enact the law of 1815, with some amendments, and accordingly the act of March 3, 1833, was passed (4 Stat. 632), section 3 of which is repeated in section 643 of the Revised Statutes. This act was passed under circumstances which drew upon it the serious attention of the country, and caused its provisions to be thoroughly considered. The material part of the third section received its final shape from an amendment proposed in the senate by that wise and learned jurist, Thomas Ewing, of Ohio. The test vote upon the bill in the senate was thirty-two yeas to eight nays, and the vote in the house of representatives was one hundred and twenty-six yeas to thirty-four nays. Among the yeas were John Quincy Adams, James K. Polk, John M. Clayton, George M. Dallas, Thomas Ewing, John Forsyth, Theodore Frelinghuysen, Felix Grundy, William C. Rives, Peleg Sprague, Daniel Webster, Hugh L. White, William Wilkins, John Bell, Edward Everett, Richard M. Johnson and the name, ever to be revered in this court, of James M. Wayne, with others of scarcely less note, representing different parts of the country and different political parties. President Jackson approved the bill, his legal adviser at the time being Roger B. Taney. This act remained in force until superseded by the Revised Statutes in 1874. As it was held to apply only to the customs revenue, section 67 of the act of July 11, 1866, approved by President Johnson, extended its provisions to the internal revenue. 14 Stat. 98.

We should not feel at liberty to pronounce unconstitutional a course of legislation so long continued, so deliberately maintained—sanctioned by so many venerated names and by the general approbation of the country, unless its unconstitutionality was made very clear to our minds; and, aside from this weight of authority, our reflections have brought us to the opinion that these statutes are fully warranted by the fundamental law.

The judicial power extends to all cases arising under the laws of the United States. It is argued that no criminal case can arise under those laws, except when a person is accused of violating them. But we think that, when an officer, executing in a lawful manner a law of the United States, meets with resistance; and, to overcome that resistance, uses necessary force, and, for such use of force, is charged with crime against the state, the case arises under the law of the United States. To hold that a case arises under that law, when it forbids the act under investigation, but does not arise under that law when it produces and justifies the act under investigation, is to take the words of the constitution in a sense too partial and limited. Congress can give criminal jurisdiction to the courts of the United States, when the law of the United States is the ground of defense, as well as when it is the ground of accusation.

Congress has power to levy and collect taxes and excises, and to make all laws necessary and proper to carry that power into execution. This includes the power to employ suitable officers and agents, and to protect them from accountability in the state courts for acts done, or in good faith alleged to have been done, in the course of their duty. We can not say that this protection is not necessary and proper for the prompt and effective collection of the revenue. It is obvious that, where a local sentiment, adverse to a particular revenue law, could exert itself in irremovable prosecutions in the local courts against persons executing that law, the collection of the revenue might be seriously impeded. Congress has thought proper to guard against such impediments by the law that we are now considering, and we are satisfied that it is a constitutional means to a constitutional end.

We do not overlook the objection that no tribunals but those of the state can try for crime against the state. This objection does not appear to us well founded. To try, is to

ascertain by a jury whether a criminal law of the state has been violated. In civil cases, congress has directed the courts of the United States to apply the law of the state, and they do it daily. In the criminal cases under consideration, congress has directed the circuit courts to apply the law of the state, and we do not see why they may not do it as well as in cases of the other class. To learn what is the criminal law of the state is no more difficult than to learn what is its civil law. Juries are, in the courts of the United States, composed of the citizens of the state, of the same qualifications as jurors in the state courts, and selected by similar rules. The courts of the United States ascertain facts by evidence substantially the same as that received in the state courts, and have the like aid of counsel for the prosecution and for the defense. In case of conviction, the accused could not decently object to a jurisdiction to which he had himself appealed. If any difficulty should arise in executing a sentence, congress could provide against its recurrence by further legislation; but, until such a difficulty shall occur in practice, we need not apprehend one.

We would not suffer the right of removal to be abused. We shall enforce it only when it has been claimed in good faith and on good grounds. Should we discover, either before or during trial, that the facts of a case did not bring it within the act of congress, we should proceed no further with it, and should remand it to the state court.

But suppose that the circuit court can not try such cases, it would not follow that congress could not deliver the prisoners from the custody of the state court, and stay proceedings there. The power to do this is distinct from the power to give the courts of the United States a jurisdiction for trial. A notable instance of the exercise of such a power by congress is found in the act of August 29, 1842 (5 Stat. 539), re-enacted in the Revised Statutes (section 702), empowering the judges of the United States to deliver, by the writ of habeas corpus, foreigners confined by the state courts for acts done under the authority of foreign powers. The confinement and trials of such prisoners by the state court for such offenses was deemed by congress incompatible with the international obligations of the United States, and accordingly provision was made for discharging them by habeas corpus. This act was drafted by Mr. Webster and was introduced and advocated in the senate by Mr. Berrien, and though it did not escape criticism at the time, we believe that the intelligent minds of the country now approve of it.

If a prisoner can be delivered from the custody of the state courts by habeas corpus, in order that the government may be unembarrassed in its international duties, he can be similarly delivered when congress so provides in order that the government may be unembarrassed in the collection of its revenue. If the law of the United States and the law of the state can not both be executed, the latter must give way. But in the case now before us, we think that the state law can be executed, though not by the state tribunals.

The present case falls within the letter of section 643. It is argued that this section applies only to cases of attempts by state legislatures to nullify a law of the United States. It is not so limited in its terms. Indeed, the act of 1866 was passed when no such attempt existed or was apprehended. We, therefore, think that the law is applicable to this case.

It is, therefore, adjudged that the detention of the petitioners by the sheriff is in violation of the law of the United States, and it is ordered that the marshal hold them in custody, subject to the further order of this court, for trial under the indictment found against them by the superior court of Lumpkin county.