## Commonwealth v. Litchfield.

*William J. MacCarter*, District Attorney, and *William B. McClenachan* and *Louis S. Bloom*, Assistant District Attorney, for Commonwealth.

*J. L. Kilcoyne, Evan B. Lewis* and *R. W. Beatty*, for defendant.

MACDADE, J., June 21, 1929.—The above case was called by the district attorney for trial before us on June 12, 1929, which date it was scheduled for trial on our printed list, or calendar of criminal trials, in due course, but the defendant failed to respond to the call when his name was called three times.

No explanation was given for his absence, either in person or by attorney, although he gave security on March 27, 1929, when the alleged offense was committed, before an alderman in the City of Chester in the sum of $2000 (own recognizance), to appear at the June Sessions, 1929, of our Quarter Sessions Court, to answer such charges as might be preferred against him, namely, operating a motor-vehicle while under the influence of intoxicating liquor, in violation of the Act of Assembly of the Commonwealth of Pennsylvania of May 11, 1927, § 621, par. *(f)*, P. L. 886, which reads as follows:

"It shall be unlawful for any person to commit any of the following acts:
. . . .

"*(f)* To operate a motor-vehicle while under the influence of intoxicating liquors . . . or permit any person who may be under the influence of intoxicating liquor . . . to operate any motor-vehicle owned by him or in his control or custody."

This is a misdemeanor for which the defendant must be indicted by the grand jury, which was done June 3, 1929, and upon conviction of its violation, the following penalty is provided, namely, $200 or imprisonment for three months, or both such fine and imprisonment. The Act of 1929 amends the Act of 1927 by increasing the imprisonment to three years. See section 620, paragraph *(f)*, Act of Assembly of May 1, 1929, effective June 1, 1929.

When the defendant was duly indicted on June 3rd aforesaid, the district attorney publicly announced, as is the custom, that the said case was listed for trial on June 12, 1929, at 9 A. M. (Standard Time), and when said time arrived, the above took place. (See Notes of Testimony filed.)

The transcript was filed March 30, 1929, and the indictment thereon, as referred to above, is as follows:

"In the Court of Quarter Sessions of the Peace of the County of Delaware. No. 42, June Sessions, 1929.

"County of Delaware, *ss.*:

"The Grand Inquest of the Commonwealth of Pennsylvania, inquiring for the County of Delaware, upon their respective oaths and affirmations, do present, That Herman V. Litchfield, late of the said County Yeoman, on the twenty-seventh day of March, in the year of our Lord one thousand nine hundred and twenty-nine, at the County aforesaid, and within the jurisdiction of this Court, with force and arms, etc., did unlawfully, wilfully and maliciously operate a certain motor-vehicle while under the influence of intoxicating liquors, in and upon a certain public highway in the City of Chester, County of Delaware, and State of Pennsylvania, contrary to the form of the Act of the General Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania.

"WM. J. MacCARTER, Jr.,
"District Attorney."

The defendant not appearing for trial on June 12th to answer his indictment, the district attorney then asked in open court that the recognizance be forfeited and a bench warrant issue for the defendant. Before acting upon this usual application of the district attorney when a defendant does not answer when called for trial, we learned upon inquiry the following:

Mr. Bloom: This is a charge of operating a motor-vehicle while under the influence of intoxicating liquor. The defendant's name has been called. He doesn't answer.

Mr. McClenachan: Before asking that a bench warrant be issued, I want to call the court's attention to a rule which has been served on the clerk of the court of this county yesterday in behalf of the United States District Court in Philadelphia. It appears that a petition has been filed by Herman V. Litchfield to George W. Coles, United States Attorney for the Eastern District of Pennsylvania, before this rule was issued and served on the party here, directing this court to show cause why the proceeding should not be removed to the District Court of the United States. The case is one of driving an automobile while the operator was intoxicated, and the order says that the defendant was acting as a Federal prohibition officer in making investigations of liquor violations in the City of Chester under assignment by Colonel Samuel O. Wynne, Federal Administrator for the Fifth Prohibition District of Pennsylvania, and that the defendant was acting under color of his office as prohibition agent. The rule is not returnable until Friday. We feel that we can go ahead with the trial of the case, and if he is not here we can have a bench warrant issued. The rule is not absolute until the hearing is heard on Friday. Nothing stays any of the proceedings.

The Court: What is the charge against Litchfield? Mr. McClenachan: Operating a motor-vehicle while the operator was under the influence of intoxicating liquor.

The Court: What has the United States to do with that? Mr. McClenachan: He is an agent; an agent of the Prohibition Department, a Federal prohibition officer.

The Court: But the same as any ordinary person——? Mr. McClenachan: And we contend he ought to be the same as any ordinary person coming within the jurisdiction of this court.

The Court: This happened in the City of Chester? Mr. McClenachan: Yes, sir. He has been indicted for that offense and, notwithstanding the fact he is a prohibition enforcement agent, he is the same as any other individual driving a motor-vehicle along the highways of this State and in this county and ought to be amenable to the laws providing for such cases.

The Court: The man referred to is a United States officer? Mr. McClenachan: Yes, sir.

The Court: And he is charged with operating a motor-vehicle while under the influence of intoxicating liquor? Mr. McClenachan: Yes, sir.

The Court: And his case is scheduled for trial today? Mr. McClenachan: Yes, sir.

The Court: Witnesses are here? Mc. McClenachan: Yes, sir.

The Court: And you are served with this (indicating)? Mr. McClenachan: Yesterday.

The Court: With what? Mr. McClenachan: With notice of rule to show cause why writ of *habeas corpus cum causa* should not issue.

The Court: What is the petition? Mr. McClenachan: We have the order.

The Court: The court may look at it, but can't you read it? Mr. McClenachan: An order from the United States District Court.

The Court: That looks like a carbon copy. Mr. McClenachan: This is the order filed.

The Court: You are handing up a part of the record in the case? Mr. McClenachan: It was handed to the clerk of court of this county yesterday and by him handed to us. Mr. Meli has a certified copy of the order.

The Court: What I want to know, is that (indicating) the original which was served? Mr. McClenachan: No.

The Court: Where did you get that (indicating)? Mr. McClenachan: This (indicating) is the paper, copy of the original. This is what was served on the clerk of the courts in this county.

The Court: The original of this was directed to the clerk of the Quarter Sessions of Delaware County? You don't tell me where you received this paper (indicating). Mr. McClenachan: I received it from the district attorney and I presume he got it from the clerk of the court.

The Court: Is that (indicating) what was served on the clerk of the court? Mr. McClenachan: Yes, sir.

The Court: Why isn't it filed? Mr. McClenachan: We can have it marked filed now.

The Court: Well, I don't know. You will have to tell me. Mr. McClenachan: We might mark it filed now.

The Court: We can't consider anything that is not filed. Mr. McClenachan (to the clerk): Mark it filed. (Paper so marked.) Mr. McClenachan: Issued on petition of the defendant himself and gotten up on representations by George W. Coles.

The Court: The district attorney calls our attention to the paper. When it is filed, let us know what it is. Mr. McClenachan: The order is here.

The Court: Read it. Mr. McClenachan (reading):

"In the District Court of the United States for the Eastern District of Pennsylvania. June Term, 1929, No. ——.

"United States of America ex rel. Herman V. Litchfield *v.* Commonwealth of Pennsylvania, City of Chester.

"Rule to show cause why writ of *habeas corpus cum causa* should not issue.

Order.

"And now, to wit: June 11, 1929, it being represented to this Court by George W. Coles, United States Attorney for the Eastern District of Pennsylvania, that the above named petitioner, Herman V. Litchfield, now under indictment for driving while intoxicated, in the Quarter Sessions Court of Delaware County, Pennsylvania, his case being listed for trial at Media, Pennsylvania, on June 12, 1929, at 9.30 A. M. (Daylight Saving Time), was, at the time of his alleged driving while intoxicated, to wit, on March 27, 1929, acting under color of his office, to wit, was

acting as a Federal Prohibition Officer in making investigations of liquor violations in the City of Chester, Pennsylvania, being accompanied at the time by Prohibition Agent E. R. Walton, both the said petitioner and the said E. R. Walton being at the time under assignment by Col. Samuel O. Wynne, Federal Administrator for the Fifth Prohibition District of Pennsylvania, to make the said investigation of liquor violations in Chester, Pennsylvania. Now, on motion of the said George W. Coles, United States Attorney aforesaid, a rule is granted on the Clerk of the Court of Quarter Sessions of Delaware County, Pennsylvania, to show cause why a writ of *habeas corpus cum causa* should not issue from this Court directed to the Court of Quarter Sessions of Delaware County, Pennsylvania, requiring it to stay all further proceedings in the case of Commonwealth *v.* Herman V. Litchfield, listed for trial in the said Court of Quarter Sessions of Delaware County, Pennsylvania, on Wednesday, June 12, 1929, at 9.30 A. M. (Daylight Saving Time), and to remove all further proceedings in the said cause of Commonwealth *v.* Herman V. Litchfield to this Court under the provisions of section 33 of the Judicial Code, subject to the provisions of section 37 of the Judicial Code.

"Said rule is made returnable to this Court on the 14th day of June, 1929, at 10 o'clock (Daylight Saving Time).

"A copy of this Order to be delivered to the Clerk of the said Quarter Sessions Court of Delaware County, Pennsylvania, or left at his office, by the United States Marshal for the Eastern District of Pennsylvania, or by his deputy, or by some other person.                    "By the Court:        DICKINSON, J."

The Court: Is it certified at all? Mr. McClenachan: It is not certified.

The Court: No seal? Mr. McClenachan: No, sir.

The Court: Mr. Meli has a certified copy of it? Mr. McClenachan: We sent him in and they gave him a certified copy of this order which is the same as this order (indicating).

The Court: You claim this (indicating) is simply a copy, do you? Mr. McClenachan: Yes, sir.

The Court: A copy of the order which was made? Mr. McClenachan: Yes, sir. There is no certification or attestation of any kind.

The Court: We won't stand on technicalities. You are now calling the case? Mr. Bloom: Yes, sir.

The Court: When is this matter to be heard? Mr. McClenachan: The 14th of June, which will be Friday of this week.

The Court: Is it made returnable in Philadelphia or is it to be put on our list? Mr. McClenachan: Returnable to the District Court of the United States in Philadelphia. That (indicating) is a rule to show cause returnable on the 14th.

The Court: The court makes this suggestion if you desire to handle the case in this way: We cannot try it because, assuming that is an order of the United States Court, as a matter of comity we would recognize any order of the United States Court as a superior court to this. The United States Government has a right to remove any and all cases it sees fit to be removed to the United States Court under the Act of Congress. That applies to criminal as well as civil causes. In your position as district attorney, you may call the case and continue it formally until next Monday. Meanwhile, you will attend court in Philadelphia in response to that rule and make the necessary answer thereto and the court will then dispose of it and inform the court that we have continued the case, although we have called it for trial. Let us keep our records straight here. The bail is good. It is simply continued until Monday because of the intervention of the United States Government through its United States Attorney. The district attorney will make the answer for the clerk of the court, and in Philadelphia the court may decide it has no jurisdiction in this matter, that it is purely a State offense, but let the United States Court pass upon that and we won't interfere with them, and if it is necessary for us to make the decision, we will make the decision Monday.

Generally, is that the way they would handle a charge against a Federal officer being charged with such an offense, driving a motor-vehicle while under the influence of intoxicating liquor? If one were to commit murder in this county, would the United States remove the case of murder to the United States Court and try him there in times of piping peace, not on the high seas? Mr. McClenachan: I presume so.

The Court: This man has violated an act of assembly of this Commonwealth and it has exclusive right to try him in this jurisdiction. It may be that they will so decide in Philadelphia. At the same time, as long as this rule has been taken to show cause why writ of *habeas corpus* should not issue, we will let them pass

upon it first, and the district attorney may be present at the hearing, and I have no doubt at all but that the district attorney can convince Judge Dickinson it is purely a State offense.

The case is formally continued until Monday, June 17, 1929, at 10 A. M. .

We directed the district attorney to pursue this course because we thought the Federal court should hear and determine the jurisdictional question before granting the writ of *certiorari* unless there was a pressing emergency, which latter is not the case, and continued the case until June 17, 1929, at 9 o'clock A. M. (Standard Time) : In re Duane, 261 Fed. Repr. 242.

The above decision was rendered under Judicial Code, § 33, which code was amended by the Act of Aug. 23, 1916, 39 Stat. at L. 532, including therein "any officer of the courts of the United States" or either House of Congress.

However, we were not obliged to give the district attorney such instructions, for we had nothing before us of any Federal intervention. The paper we had before us was alleged to have come from the Federal court from this district. It was a carbon copy of an order only and not even certified. It was said to have been handed to the Clerk of the Court of Quarter Sessions on the day the case was scheduled for trial here (June 12th). Indeed, under the ruling (In re Vadner, 259 Fed. Repr. 614) it was held that the State court does not lose jurisdiction until an order is filed therein from the Federal court directing the removal.

That was not done in the instant case, and our high regard for the Federal court, together with the spirit of comity so necessary in effectually enforcing our laws without judicial friction, motivated us to postpone action to permit the Federal authorities to get themselves properly before both courts.

It certainly was not our duty to honor such paper writing, purporting to be an order of the Federal court, for several reasons: (1) Even if the service had been legal and the matter properly before us, the writ of *habeas corpus cum causa* was issued inadvisedly under the circumstance of the instant case; and (2) the State does not desire the trial to be had in the Federal court, for it is in the attitude of protesting that the trial should be had in its own court. It would suffer the removal *in invitum*.

The proper practice to be observed by the Federal authorities would be as to the removal of a cause to pursue the course indicated in Tennessee *v*. Davis, 100 U. S. 257. See Judicial Code, § 33; Desty's Federal Pro., § 106.

It would not be amiss to suggest the following as a form of petition of removal, which was used in a case where a revenue officer was indicted for murder, as follows:

"Your petitioner, James M. Davis, would most respectfully show to the Court that on the twenty-first day of May, 1878, at the May Term of the Circuit Court of Grundy County, Tennessee, the grand jurors for the State of Tennessee, at the instance of E. M. Haynes, as prosecutor, indicted your petitioner for wilfully, premeditatedly, deliberately and of his malice aforethought, killing one J. B. Haynes, which indictment and criminal prosecution so instituted is still pending against your petitioner in the Circuit Court of Grundy County, within the Middle District of Tennessee.

"And he further shows that no murder was committed; but, on the other hand, the killing was committed in his own necessary self-defense to save his own life; that at the time the alleged act for which he was indicted was committed he was, and still is, an officer of the United States, to wit, a deputy collector of internal revenue, and the act for which he was indicted was performed in his own necessary self-defense, while engaged in the discharge of the duties of his office as deputy collector of internal revenue; and he was acting by and under the authority of the internal revenue laws of the United States, and was done under and by right of his office, to wit, as deputy collector of internal revenue. It is his duty to seize illicit distilleries and the apparatus that is being used for the illicit and unlawful distillation of spirits, and while so attempting to enforce the revenue laws of the United

States, as deputy collector, aforesaid, he was assaulted and fired upon by a number of armed men, and in defense of his life, returned fire.

"In view of these facts, your petitioner prays that said cause may be removed from the Circuit Court of Grundy County to the District Court of the United States for the Middle District of Tennessee for trial, and that a *certiorari* issue. And as in duty bound he will ever pray. "JAMES A. WARDER,

"Attorney."

Where order of removal should be made, it would be proper to issue a writ of *certiorari* to the state court to remove the suit to the Federal court.

In practice, this should be followed by an order of the state court staying proceedings in the state court when the case has been removed by order of a District Court of the United States after the latter court has had the averments of the petition to remove verified by a person or persons in whom the court has confidence. The evidence should be sufficient to satisfy the conscience of the court that justice can be had in the state court in prosecuting the defendant for a violation of a state law, which act was not done while engaged in the discharge of the duties of his office as a prohibition enforcement officer of the United States and while he was acting by and under the authority of the prohibition laws of the United States, and was done under and by right of his office, to wit, as a prohibition enforcement officer.

In practice also—

A certified copy of the order of removal to the District Court of the United States is filed in the state court; but the proper procedure is to issue a writ of *certiorari* in cases where the application to remove is made to the Federal court: Loveland on Federal Procedure, "Removal of Causes;" Virginia *v.* Felts, 133 Fed. Repr. 85.

In the latter case, concerning the writ to issue out of the Federal court, the following is found in the opinion, commencing on page 88:

"It will be observed that the statute makes no provision where the prosecution is commenced by a *capias* or process of arrest for any other writ than that of *habeas corpus cum causa*. This writ, where, as is usually the case, the petitioner has given bail and is not in actual custody, is not well adapted to the purpose in view. It is adapted to be addressed to the person who has the petitioner in his custody, and commands such person to bring the body of the petitioner before the court whose clerk issues it and make known the cause of his capture and detention. A not unusual practice, where the petitioner is not in actual custody, is to address the writ to the marshal of the Federal district and issue a duplicate, which is served on, or left at, the office of the clerk of the state court in which the indictment is pending.

"No provision is made for the issue of a writ of *certiorari* in a case commenced by *capias or* other process of arrest. As a rule, the clerk of the state court, obeying so far as he can the command of the writ of *habeas corpus cum causa*, sends to the Federal court the original bill of indictment (which should be identified by proper certificate of the state court clerk), or certifies a copy thereof, along with a copy of the orders, if any, made by the state court in connection therewith. If, however, the clerk of the state court fails or refuses to do either (and unless his proper fees are paid or tendered him, he can, I think, rightfully so refuse), the course to be pursued is set out in section 645, Revised Statutes (now Judicial Code, § 35).

"It has been mooted whether it is the duty of the state or of the petitioner to procure the indictment and proceedings of the state court. I do not think this is the duty of the state. It suffers the removal *in invitum*. It is in the attitude of protesting that the trial should be had in its own court. As the state does not desire the trial to be had in the Federal court, and as the court

cannot try the case until the indictment has been procured (or until it has been supplied by affidavit or otherwise), it follows that the duty of procuring or supplying the indictment does not rest on the state but on the petitioner."

Therefore, we hold that a writ of *habeas corpus cum causa*, if this order is so intended, is not well adapted to the purpose in view as the petitioner has given bail and is not in actual custody.

Notice of application for removal should have been given to the State court a reasonable time before the time for hearing, as well as the time fixed for trial of the cause in the State court: Carson & R. Lumber Co. *v.* Holtzclaw, 39 Fed. Repr. 578; 47 Fed. Repr. 836; 8 C. C. A. 92; 59 Fed. Repr. 209; 34 Fed. Repr. 225; Ellison *v.* L. & N. R. R. Co., 112 Fed. Repr. 805; 50 C. C. A. 530. See Madisonville Traction Co. *v.* Saint Bernard Mining Co., 196 U. S. 239, 49 L. Ed. 462, which latter case holds among other things that:

"1. If a case be a removable one, that is, if the suit in its nature be one of which the circuit court could rightfully take jurisdiction, then, upon the filing of a petition for removal in due time, with a sufficient bond, the case is, in law, removed, and the state court in which it has been pending will lose jurisdiction to proceed further, and all subsequent proceedings in that court will be void.

"2. After the presentation of a sufficient petition and bond to the state court in a removal case, it is competent for the Circuit Court, by a proceeding ancillary in its nature, without violating section 720 of the Revised Statutes, forbidding a court of the United States from enjoining proceedings in a state court, to restrain the party against whom a cause has been legally removed from taking further steps in the state court.

"3. It is well settled that, if, upon the face of the record, including the petition for removal, a suit does not appear to be a removable one, then the state court is not bound to surrender its jurisdiction and may proceed as if no application for removal had been made." And, at page 253, it is said: "A state cannot, by any statutory provisions, withdraw from the cognizance of the Federal courts a suit or judicial proceeding in which there is such a controversy" (*i. e.*, between citizens of different states).

These summary statements were made in 1904, but they are entirely applicable to the provisions of the Judicial Code, 36 Stat. at L. 1087, *et seq.*

Proper practice would be to serve the state court with a certified copy of petition for removal and its order thereon so that a proper record could be made in the instant case. Certainly the court was entitled to the courtesy of having the defendant appear before it, together with his attorney, when the case was called on both June 12th and June 17th. From all we learn from the record before us, we still retain jurisdiction because the record upon its face makes no case for removal: Iowa Central Ry. Co. *v.* Bacon, 236 U. S. 305; Virginia *v.* Rives, 100 U. S. 313; Murray *v.* Louisiana, 163 U. S. 101; Powers *v.* Kentucky, 101 U. S. 303; Virginia *v.* Paul, 148 U. S. 107.

However, if a judgment has been rendered by the District Court, conceding that it may protect its jurisdiction by injunction against further proceedings in the state court, even if jurisdiction be improperly assumed and retained, the jurisdictional question can be reviewed by the United States Supreme Court, and, until reversed, the judgment is binding on the state court and cannot be treated as a nullity: C. & O. Ry. Co. *v.* McCabe, 213 U. S. 207; Dowell *v.* Applegate, 152 U. S. 327.

We have no knowledge from our record that the Federal Court has made an order of removal in the instant case, and until we do we shall retain jurisdiction. However, if an order of removal has been made, and while we may

contend that such would be improperly assumed and retained, yet we must not treat such order as a nullity.

In view of these circumstances, we again continued the case until June 21, 1929, at 9 o'clock (Daylight Saving), and yet the defendant failed to appear on both occasions. To all intents and purposes, the defendant is subject to our jurisdiction, retaining the same because of no record of removal of the cause to the Federal court; so, therefore, upon motion of the district attorney, the defendant's recognizance was forfeited and a bench warrant directed to be issued for the apprehension of the said defendant. The court has, however, stayed its process until we are officially advised that there is an order of removal, in which event the bench warrant will not be executed; but in the event there is no order of removal from the Federal court prior to our September Term of the Court of Quarter Sessions, the said bench warrant will be served upon the defendant; hence, to be brought before us for such action as the court may hereafter deem just and proper according to the exigencies.

In conclusion, we fail to perceive after a careful and exhaustive examination and searching analysis wherein the Federal court has jurisdiction of the present cause, for emphatically the offense committed and charged against the defendant was not done under the color of the office of Federal prohibition officer and by authority of the Prohibition Law, inclusive of the Federal and State Constitutions and Federal and State laws.

While it is conceded under section 31 of the Judicial Code, 36 U. S. Stat. at L. 1096; Rev. Stat., 641; Act of March 3, 1911, ch. 231, § 316, Congress, in order to maintain the supremacy and secure the observance of Federal rights and immunities, may authorize the removal of a prosecution for a state offense into the Federal courts and the presence of the Federal element confers jurisdiction over the whole cause (Tennessee v. Davis, 100 U. S. 257); and, further, it was held, in the latter case, that:

"The United States is a government with authority extending over the whole territory of the Union, acting upon the states and the people of the states. While it is limited in the number of its powers, as far as its sovereignty extends, it is supreme. No state can exclude it from exercising any authority conferred upon it by the Constitution, obstruct its authorized officers against its will, or withhold from it, for a moment, the cognizance of any subject which that instrument has committed to it.

"The general government must cease to exist whenever it loses its power of protecting itself in the exercise of its constitutional powers. It can act only through its officers and agents, and they must act within the states. If, when thus acting and within the scope of their authority, those officers can be arrested and brought to trial in a state court for an alleged offense against the law of the state, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection—if their protection must be left to the action of the state court—the operations of the general government may at any time be arrested at the will of one of its members.

"No such element of weakness is to be found in the Constitution.

"The judicial power of the United States by the express words of the Constitution extends 'to all cases in law and equity arising under the Constitution, the laws of the United States and treaties made or which shall be made under their authority.'

"That provision embraces alike civil and criminal cases arising under the Constitution and laws of the United States: Cohens v. Virginia, 6 Wheat.

399. Both are equally within the domain of the judicial power of the United States.

"A case arises under the Constitution of the United States, not merely where a party comes into court to demand something conferred upon him by the Constitution or by a law or treaty, but wherever its correct decision as to the rights or defense of either party depends upon the construction of either. It is in the power of Congress to give the Circuit Courts of the United States jurisdiction of such a case, although other questions of fact or of law may be involved in it.

"If the case, whether civil or criminal, be one to which the judicial power of the United States extends, its removal to the Federal court is no invasion of state domain. On the contrary, a denial of the right of the general government to remove them, to take charge of and try any case arising under the Constitution and laws of the United States, is a denial of the conceded sovereignty of that government over a subject expressly committed to it. It is a denial of a doctrine necessary for the preservation of the acknowledged powers of the government. The power to remove is as ample in criminal as in civil cases. The exercise of that power as to criminal prosecutions is seen in the Act of Feb. 4, 1815; again in the Act of March 2, 1833, § 3, ch. 57, and more recently in the Act of July 13, 1866."

But the argument is much pressed upon us that it is an invasion of the sovereignty of this State (Pennsylvania) to withdraw from its courts into the courts of the general government the trial of prosecutions for alleged offenses against the criminal laws of the State when the acts, as claimed in the case at bar, were not done under the color of his office or any prohibition laws or treaties or on account of any right, title or authority claimed by such officer (defendant) or other person under such law. Certainly, the petition for removal should contain not only that the act for which the defendant was indicted was done under color of his office as a prohibition enforcement officer or under color of the prohibition laws; not merely while he was engaged in performing his duty as a prohibition officer, but that it was done under and by right of his office in his attempts to discharge his official duty. The Act of Congress authorizes the removal of any cause, when the acts of the defendant complained of were done, or claimed to have been done, in discharge of his duty as a Federal officer. It makes such a claim a basis for the assumption of Federal jurisdiction of the case and for retaining it at least until the claim proves unfounded.

It ought, therefore, to be considered as settled that the constitutional powers of Congress to authorize the removal of criminal cases for alleged offenses against the state laws from state courts to the District Courts of the United States when there arises a Federal question in them, is as ample as its power to authorize the removal of a civil case. Such power is indispensable to the enforcement of Federal law. It was more necessary that this jurisdiction should be entered over criminal than over civil cases. If it were not admitted that the Federal judiciary has jurisdiction of criminal cases, then was nullification ratified and sealed forever; for a state would have nothing more to do than to declare an act a felony or misdemeanor to nullify all the laws of the Union.

The argument that it is an invasion of the sovereignty of a state to withdraw from its courts into the courts of the general government the trial of prosecutions for alleged offenses against the criminal laws of a state, even though the defense presents a case arising out of an Act of Congress, ignores entirely the dual character of our government. It assumes that the states

are completely and in all respects sovereign. But when the National Government was formed, some of the attributes of state sovereignty were partially, and others wholly, surrendered and vested in the United States. Over the subjects thus surrendered, the sovereignty of the states ceased to extend. Before the adoption of the Constitution, each state had complete and exclusive authority to administer by its courts all the law, civil and criminal, which existed within its borders. Its judicial power extended over every legal question that could arise. But when the Constitution was adopted, a portion of that judicial power became vested in the new government created, and, so far as thus vested, it was withdrawn from the sovereignty of the state. Now the execution and enforcement of the laws of the United States, and the judicial determination of questions arising under them, are confided to another sovereign, and to that extent the sovereignty of the state is restricted. The removal of cases arising under those laws from state into Federal courts is, therefore, no invasion of state domain. On the contrary, a denial of the right of the general government to remove them, to take charge of and try any case arising under the Constitution or laws of the United States, is a denial. of the conceded sovereignty of that government over a subject expressly committed to it.

Federal sovereignty, as well as the sovereignty of states, is limited and restricted by the Constitution. Certain powers, legislative, executive and judicial, are possessed by each, independent of the other, and, in the exercise of such powers, all agree that they act as separately and independently of each other as if the line of division was traced by landmarks visible to the eye: Ableman *v.* Booth, 21 How. 506, 516; 62 U. S. xvi, 169, 173.

In the instant case, matters of fact are not in dispute; and it appears by the record that the defendant, at the time mentioned in the proceedings in the United States court *de hors* our record, was duly indicted of the crime of "operating a motor-vehicle while under the influence of intoxicating liquor" by the grand jury of Delaware County, where the offense was committed, and that the indictment is still pending in the proper court of the State where it was filed.

Adjudged cases are not necessary to show that no Federal court created by Congress had jurisdiction of the offense, as the offense was committed on land within the State, and not within any place over which the United States had exclusive jurisdiction. None of these matters can be successfully controverted; and, if not, then it follows that the exclusive jurisdiction of the offense was vested in the State court, unless it can be held that the prisoner, merely because he was a prohibition officer, is privileged to remove the State indictment found by the grand jury of the State into the Federal court for trial.

Nobody before ever pretended that such an offense ever was or could be defined by an Act of Congress as an offense against the Federal authority or that the District Court or any other Federal court has or ever had any jurisdiction of such a case to try or sentence such an offender for such an offense. Federal courts have no common law jurisdiction in criminal cases, nor can such courts proceed to try or punish any offender, except when authorized by an Act of Congress, passed in pursuance of the Constitution: Pennsylvania *v.* Wheeling Br. Co., 13 How. 518, 563; United States *v.* Worrall, 2 Dall. 384, 393; Cooley, Const. Lim., 4th ed., 26; Ex parte Bollman, 4 Cranch, 75, 98.

Jurisdiction, both of civil and criminal cases, is, beyond doubt, conferred upon the general government by several of the clauses of the 3rd article of the Constitution, describing the judicial power, entirely exclusive of that pos-

sessed by the tribunals of the states; but it is equally clear that none of them, except the introductory clause of section 2 of that article, authorize any Federal court to re-examine the judgment of a state court in a criminal case or to supersede the power of a state court to exercise its lawful jurisdiction in such a case.

Legislative power is, undoubtedly, vested in Congress to pass laws to define and punish offenses against the authority of the United States; but it does not follow, by any means, that a prisoner charged with murder committed in violation of the laws of a state may claim to be tried in a Federal District Court or that a state indictment for such an offense constitutes a case arising under the Constitution or the laws of the United States or that it can in any way become cognizable in such a tribunal; certainly not unless it can be removed there in pursuance of some Act of Congress defining the offense and providing for the trial and punishment of the offender. Persons charged with offenses against the authority of the states find ample guarantees of a fair trial in the laws of the states and the usages of the state courts, and if the Federal officers need more, it belongs to Congress to provide the remedy in some mode authorized by the Constitution: 1 Kent's Comm. (12th ed.), 340.

Ordinary regulations of police, says Cooley, have been left with the states, nor can it be taken from them and exercised under legislation by Congress. Nor can the National Government, through any of its departments or officers, assume any supervision of the police regulations of the states. All that the Federal authority can do is to see that the states do not, under cover of this power, invade the sphere of national sovereignty, obstruct or impede the exercise of any authority which the Constitution has confined to the Nation, or deprive any citizen of rights guaranteed by the Federal Constitution: Cooley, Const. Lim. (4th ed.), 715.

No direct general power over these objects, says Marshall, C. J., is granted to Congress, and, consequently, they remain subject to state legislation: Gibbons v. Ogden, 9 Wheat. 203.

Within state limits, says Chase, C. J., an Act of Congress upon the subject can have no constitutional operation: United States v. De Witt, 9 Wall. 41, 45; 76 U. S. xix, 593, 594.

Acts of Congress cannot properly supersede the police powers of the state, nor can the police powers of the state override the national authority, as the power of the state in that regard extends only to a just regulation of rights with a view to the due protection and enjoyment of all; and if the police law of the state does not deprive any one of that which is justly and properly his own, it is obvious that its possession by the state and its exercise for the regulation of the action of the citizens can never constitute an invasion of national jurisdiction or afford a basis for an appeal to the protection of the national authorities.

Had the defendant been permitted, *arguendo*, to drive and operate the motor-vehicle in question unmolested by the peace officers while he was under the influence of intoxicating liquor and had run down recklessly and killed one of the police officers who was on duty, say, a traffic officer, could the proposition of removal of the case be less astonishing than the one set forth in the case at bar. Judging from the record, the indictment is against the prohibition enforcement officer for operating while under the influence of intoxicating liquor a motor-vehicle against the peace and dignity of the State of Pennsylvania. No special ground is set forth for the removal, nor anything that can be tortured into a reason for withdrawing the case from the jurisdic-

tion of the State court, unless it be that the defendant is a Federal enforcement officer.

Whatever defense he has to this indictment can as well be made in the State court as in the District Court, unless it be assumed that a Federal officer is entitled as a matter of right to transfer every indictment against him for crime, when found in a state court, into a Federal court for trial.

Persons accused of capital or other infamous crimes must be indicted by a grand jury, and when the offense is committed in a state, they must be tried in the state where it was committed; but attention is not called to any article or section of the Constitution that forbids that a Federal officer shall be tried in a state court for murder committed in the state, against the peace and dignity of the state and contrary to the form of the state statute defining the offense.

Large concessions were made by the states to the United States, but they never ceded to the National Government their police powers or the power to define and punish offenses against their authority, as admitted by all courts and all commentators upon the Constitution, which leads us to the following conclusions:

1. That the Revised Statute in question does not authorize the removal of this indictment for an offense against the laws of the State from the State court, where it is pending, into the District Court of the United States for trial.

2. That if it does purport to confer that authority, it is unconstitutional and void.

We have prepared the above opinion touching the *essentialia* in the above case, which is confined mainly to criminal prosecutions for indictable offenses, as merely tentative. Nothing herein is intended as the expression of an unalterable opinion, as this is prepared in advance of the trial, and chiefly for the purpose of directing the attention of the district attorney and the defendant and his counsel to some of the nicer questions which will probably arise later when the defendant is arraigned for trial before a state court: State of Virginia v. Felts, 133 Fed. Repr. 85.

The following authorities may be advantageously consulted concerning the questions hereinabove considered: Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; Davis v. South Carolina, 107 U. S. 597, 27 L. Ed. 574; Virginia v. Paul, 148 U. S. 107, 13 Sup. Ct. 536, 37 L. Ed. 386; Chicago R. R. Co. v. Ohle, 117 U. S. 123, 6 Sup. Ct. 632, 29 L. Ed. 837; Carson v. Dunham, 121 U. S. 421, 7 Sup. Ct. 1030, 30 L. Ed. 992; Kansas City Ry. Co. v. Daughtry, 138 U. S. 303, 11 Sup. Ct. 306, 34 L. Ed. 963; Abranches v. Schell, Fed. Cas. No. 21, 4 Blatchf. 256; Findley v. Satterfield, Fed. Cas. No. 4792, 3 Woods, 504; Fisk v. Union Pacific Ry. Co., Fed. Cas. No. 4827, 6 Blatchf. 362; Galvin v. Boutwell, Fed. Cas. No. 5207, 9 Blatchf. 470; Georgia v. O'Grady, Fed. Cas. No. 5352, 3 Woods, 496, 24 Int. Rev. Rec. 5; Murray v. Patrie, Fed. Cas. No. 9967, 5 Blatchf. 343; State v. Port (C. C.), 3 Fed. Repr. 117; Hoyt v. Wright (C. C.), 4 Fed. Repr. 168; Mackaye v. Mallory (C. C.), 6 Fed. Repr. 750, 751; Georgia v. Bolton (C. C.), 11 Fed. Repr. 217; Eaton v. Calhoun (C. C.), 15 Fed. Repr. 155; Gribble v. Pioneer Co. (C. C.), 15 Fed. Repr. 689; State v. Fletcher (C. C.), 22 Fed. Repr. 776; Clarkhuff v. Wisconsin Ry. Co. (C. C.), 26 Fed. Repr. 465; Kessinger v. Hinkhouse (C. C.), 27 Fed. Repr. 884; Smith v. Chicago Ry. Co. (C. C.), 30 Fed. Repr. 722; Anderson v. Appleton (C. C.), 32 Fed. Repr. 857; Imperial Co. v. Wyman (C. C.), 38 Fed. Repr. 574, 3 L. R. A. 503; North Carolina v. Kirkpatrick (C. C.), 42 Fed. Repr. 689; Curnow v. Phœnix Co. (C. C.), 44 Fed. Repr. 305; Goodnow

*v.* Litchfield (C. C.), 47 Fed. Repr. 754; State *v.* Sullivan (C. C.), 50 Fed. Repr. 593; Carico *v.* Wilmore (D. C.), 51 Fed. Repr. 196, 200; Com. *v.* Bingham (C. C.), 88 Fed. Repr. 561; 18 Ency. Pl. & Pr., 181, 372, *et seq.*

We hold that the case in our court, being a prosecution of the defendant for a State crime for which he is indicted, is not removable under the provision of the Judicial Code authorizing removal of prosecutions against Federal officers on account of any act done under color of their office, any more than if such Federal officer had perjured himself or conspired to suppress evidence and was indicted in the State court for falsely stating that certain material matters had not transpired or entered into a conspiracy, when he knew that they had, pending a State investigation through a coroner into the circumstances of a death. The latter cause cannot be removed on account of any act done under color of office: Maryland *v.* Soper, U. S. S. Ct. Reps., 70 L. Ed., 449, 459, 462; 270 U. S. 9; Id. 36; Id. 44; section 33 of the Judicial Code, as amended Aug. 23, 1916, 39 Stat. at L. 532, chap. 399, U. S. Comp. Stat. 1015, Fed. Stat. Ann. Supp., 1918, page 401.

The text of the amended section, in so far as it is material here, is set out below:

"Section 33. That when any civil suit or criminal prosecution is commenced in any court of a state against any officer appointed under, or acting by, authority of any revenue law of the United States, now or hereafter enacted, or against any person acting under, or by authority of, any such officer, on account of any act done under color of his office or of any such law, or on account of any right, title or authority claimed by such officer or other person under any such law, or is commenced against any person holding property or estate by title derived from any such officer and affects the validity of any such revenue law, or against any officer of the courts of the United States, for or on account of any act done under color of his office or in the performance of his duties as such officer, or when any civil suit or criminal prosecution is commenced against any person for or on account of anything done by him while an officer of either House of Congress in the discharge of his official duty in executing any order of such House, the said suit or prosecution may, at any time before the trial or final hearing thereof, be removed for trial into the District Court next to be holden in the district where the same is pending, upon the petition of such defendant to said District Court, and in the following manner:" 70 L. Ed. 452.

While agents of a Federal prohibition director are, in searching for evidence of certain violations of the Volstead Act and its amendments, and of the Constitution of the United States, relating to the manufacturing, etc., of intoxicating liquor, within the protection of a statute authorizing the removal to a Federal court for trial of a prosecution against an officer acting under authority of any revenue law of the United States, the statute does not apply to prohibition agents when acting as such; yet the provision of section 28, title II, of the National Prohibition Act, giving the commissioner, his assistants, agents and inspectors all the protection in the enforcement of the act which is conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquor under the laws of the United States, gives them the benefit of the statute permitting the removal of prosecutions for acts committed in the performance of their duties from state to Federal courts for trial.

Therefore, however, a Federal prohibition officer, prosecuted in a state court for a crime alleged to have been committed by him, must, to secure the right to remove the cause to a Federal court for trial, establish fully and

fairly by the allegations of his petition for removal that he was immune from punishment by the state because what he did was justified by his duty under the Federal law.

A Federal officer, seeking to remove a prosecution against him from a state to a Federal court for trial, should be candid, specific and positive in explaining his relation to the transaction for a crime growing out of which he had been indicted, and in showing that his relation to it was confined to his acts as such officer.

In the Soper cases, Chief Justice Taft held for the court that a petition by Federal prohibition agents to remove to a Federal court for trial a prosecution against them for murder is not sufficient which states that the acts alleged to have been done by them are alleged to have been done at a time when they were engaged in the discharge of their official duties as Federal prohibition officers, and in making and attempting to make an investigation concerning a violation of the National Prohibition Act and other internal revenue laws, and in reporting the results of said investigation, and in protecting themselves in the discharge of their duty, that the prosecution is on account of acts alleged to have been done by petitioners at a time when they were engaged in the performance of their duties as Federal prohibition agents, without anything to show that they were not doing other than official acts at the time, or that the acts done leading to the prosecution were done under color of their official duties.

Removals were declined also in the same cases for conspiracy and perjury. All were remanded to the state court upon writs of mandamus instituted in behalf of the State of Maryland.

As Chief Justice Taft most aptly states: "The prosecution to be removed under the section must have been instituted 'on account of' acts done by the defendant as a Federal officer under color of his office or of the revenue or prohibition law. There must be a causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the prosecution of him for whatever offense has arisen out of the acts done by him under color of Federal authority and in enforcement of Federal law, and he must, by direct averment, exclude the possibility that it was based on acts or conduct of his, not justified by his Federal duty."

In invoking the protection of a trial of a state offense in a Federal court under paragraph 33, a Federal officer abandons his right to refuse to testify because accused of crime, at least to the extent of disclosing in his application for removal all the circumstances known to him out of which the prosecution arose. The defense he is to make is that of his immunity from punishment by the state, because what he did was justified by his duty under the Federal law and because he did nothing else on which the prosecution could be based. He must establish fully and fairly this defense by the allegations of his petition for removal before the Federal court can properly grant it. It is incumbent on him, conformably to the rules of good pleading, to make the case on which he relies so that the court may be fully advised and the state may take issue on a motion to remand: Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U. S. 146, 151, 152, 58 L. Ed. 544, 546, 547, 34 Sup. Ct. Rep. 278, and cases cited. See, also, concurring opinion of Mr. Justice Field in Virginia v. Rives, 100 U. S., at page 332, 25 L. Ed. 674, 3 Am. Crim. Rep. 524, and Hanford v. Davies, 163 U. S. 273, 279, 41 L. Ed. 157, 159, 16 Sup. Ct. Rep. 1051.

We think that the averments of the defendant in the limited pleadings we have before us are not sufficiently informing and specific, in any event, to make a case for removal under section 33.

His averments amount to hardly more than to say that the offense on account of which he is charged was at a time when he was engaged in performing his official duties in making, or attempting to make, an investigation concerning a violation of the National Prohibition Act, but the averments should negative the possibility that he was doing other acts than official acts at the time and on this occasion or make it clear and specific that whatever was done by him leading to the prosecution was done under color of his Federal official duty.

In order to justify so exceptional a procedure, the person seeking the benefit of it should be candid, specific and positive in explaining his relation to the transaction growing out of which he has been indicted and in showing that this relation to it was confined to his acts as an officer.

There is nothing of record which excludes the possibility that the State prosecution was based on acts of the officer outside of his official duties—that during the interval of operating an automobile the defendant was engaged exclusively in the performance of official acts.

The prosecution to be removed under the section must have been instituted "on account of" acts done by the defendant as a Federal officer under color of his office or of the revenue or prohibition law. There must be causal connection between what the officer has done under asserted official authority and the state prosecution. It must appear that the prosecution of him for whatever offense has arisen out of the acts done by him under color of Federal authority and in enforcement of Federal law, and he must, by direct averment, exclude the possibility that it was based on acts or conduct of his, not justified by his Federal duty: Maryland v. Ford, 12 Fed. Repr. (2nd Series) 289.

From William R. Toal, Media, Pa.